Stephen M. LEHMAN, Appellant–
Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 35A05–0909–CR–513.

Court of Appeals of Indiana.

April 13, 2010.

Rehearing Denied June 16, 2010.

Matthew G. Grantham, Bowers, Brewer, Garrett & Wiley, LLP, Huntington, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Monika Prekopa Talbot, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

RILEY, Judge.

### STATEMENT OF THE CASE

Appellant–Defendant, Stephen M. Lehman (Lehman), appeals his conviction for Count I, dealing in cocaine, a Class A felony, Ind.Code § 35–48–4–1; Count II, dealing in a schedule I, II, or III controlled substance, a Class A felony, I.C. § 35–48–4–2; and his adjudication as an habitual substance offender, I.C. § 35–50–2–10.

We affirm.

### ISSUE

Lehman raises one issue on appeal, which we restate as: Whether the trial court properly admitted the deceased confidential informant's statement at trial.

### FACTS AND PROCEDURAL HISTORY

In August of 2008, Huntington City Police Detective Michael Slagel (Detective Slagel) worked with Charles Howard (Howard), a confidential informant. On August 5, 2008, Howard contacted Detective Slagel to inform the detective that he had a deal set up. Detective Slagel contacted other officers to help with the transaction and they all met with Howard at a predetermined meeting place. At the meeting place, Detective Slagel searched Howard and his vehicle and placed an electronic device on him. He also handed Howard $200 to purchase drugs.

Howard, followed by the officers, traveled to 626 Court Street in Huntington, Indiana. The officers saw Howard pull into the alley at the residence and then lost visual contact. However, Detective Slagel was able to hear the transaction on the audio device and recognized both Howard and Lehman's voice. Detective Slagel heard Howard and Lehman talk about weighing out different amounts of cocaine, and discuss a "ball," "powder," and "doing a line." (Transcript p. 263). Huntington City Police Detective Cory Boxell (Detective Boxell), who also monitored the transaction through the audio device, heard Lehman talk about his upcoming appointment with his probation officer. When the transaction was complete, Howard left the residence and drove to the meeting place while being followed by the officers. At the meeting place, Howard handed Detective Slagel a clear plastic bag containing a white powdery substance. This substance tested positive for cocaine.

On August 20, 2008, Detective Slagel received another call from Howard about setting up another deal with Lehman. Again, a meeting was set up at a predetermined place where Howard was searched. He was fitted with an electronic listening device and given money to buy drugs. Howard and the officers drove to Lehman's residence in separate vehicles. Howard pulled into the alley and Huntington City Police Detective Chad Hacker

(Detective Hacker) saw Lehman walk up to Howard's vehicle. Detective Slagel and Officer Boxell, who were monitoring the audio device, heard Howard talk to Lehman about twenty milligram pills and thirty milligram pills. When the transaction was completed, Howard returned to the meeting place with the officers in tow and gave Detective Slagel a clear plastic bag with ten orange twenty-milligram Adderall capsules. In the fall of 2008, Howard died of a drug overdose.

On April 2, 2009, the State charged Lehman with Count I, dealing in cocaine, a Class A felony, I.C. § 35–48–4–1; and Count II, dealing in a schedule I, II, or III controlled substance, a Class A felony, I.C. § 35–48–4–2. The next day, the State amended this charging information by adding an habitual substance offender Count, I.C. § 35–50–2–10. On July 9 and 10, 2009, a jury trial was conducted. At the close of the evidence, the jury returned a guilty verdict on Counts I and II. Thereafter, Lehman pled guilty to the habitual substance offender charge. On August 11, 2009, during the sentencing hearing, the trial court sentenced Lehman to concurrent sentences of thirty-six years each on Counts I and II, and enhanced the sentence on Count I by six years because of the habitual substance adjudication. Lehman's aggregate sentence amounted to forty-two years.

Lehman now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

Lehman contends that the trial court erred by admitting Howard's statements which he made during the two transactions and which were audiotaped. These statements were admitted through the testimony of several officers and by playing the audiotapes to the jury. Specifically, Lehman claims that the admission of the deceased confidential informant's statements constituted inadmissible hearsay and violated his right to confrontation under the United States Constitution.

We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *Iqbal v. State*, 805 N.E.2d 401, 406 (Ind.Ct.App.2004). An abuse of discretion occurs if a trial court's decision is clearly against the logic and effect of the facts and circumstances before the court. *Id.* However, if a trial court abused its discretion by admitting the challenged evidence, we will only reverse for that error if the error is inconsistent with substantial justice or if a substantial right of the party is affected. *Id.* Any error caused by the admission of evidence is harmless error for which we will not reverse a conviction if the erroneously admitted evidence was cumulative of other evidence appropriately admitted. *Id.*

### A. Inadmissible Hearsay

■ First, we turn to Lehman's claim that Howard's statements constituted inadmissible hearsay and therefore were inadmissible at trial. Our review of the record indicates that during trial, the State initially introduced Howard's statements of the August 5 conversation through Detective Slagel's testimony. Lehman objected based on unspecified hearsay grounds. The trial court overruled the objection. Additionally, Lehman concedes in his brief that he failed to object when Howard's statements were admitted through the testimony of several other officers. Lehman also objected to the introduction of the audiotapes of the August 5 and 20 conversations between Howard and Lehman. Lehman objected to the admission of the first tape on confrontational grounds and to the second tape because it was unintelligible. In each instance, the trial court overruled the objection.

Because Lehman did not raise a specific hearsay objection, he waived his argument. *Willis v. State*, 510 N.E.2d 1354, 1357 (Ind.1987), *reh'g denied, cert. denied*, 484 U.S. 1015, 108 S.Ct. 721, 98 L.Ed.2d 670 (1988). Also, we have repeatedly held that a contemporaneous objection is required to preserve an issue on appeal. *Staley v. State*, 895 N.E.2d 1245, 1248 (Ind.Ct.App.2008), *trans. denied.*[1] Nonetheless, waiver notwithstanding, we will evaluate Lehman's contention under the fundamental error theory. The fundamental error doctrine is extremely narrow and applies only when the error constitutes a blatant violation of basic principles, the harm or potential for harm is substantial, and the resulting error denies the defendant fundamental due process. *Id.*

We agree with the State that no error, let alone fundamental error, occurred in the admission of Howard's statements. In *Williams v. State*, 669 N.E.2d 956, 957 (Ind.1996), Williams contested the trial court's admission of two tapes of conversations Williams had with a police informant who died before trial. *Id.* at 957. Our supreme court ruled that the informant's statements were not hearsay as they were not admitted for the truth of the matters asserted. *Id.* at 958. Rather, the informant's statements were largely designed to prompt Williams to speak and as such, it was the statements made by Williams that really constituted the evidentiary weight of the conversation. *Id.*

Likewise here, the conversations between Howard and Lehman were short and referenced street drug-dealing terminology. In the August 5 tape, Howard and Lehman talked about weighing out different amounts of cocaine, and discussed a "ball," "powder," and "doing a line." (Tr. p. 263). In the August 20 tape, they mention "30s" and "20s." These terms only have a specific significance with regard to the drug trade. During the conversations, Howard was questioning Lehman with regard to the drugs. As such, we find that Howard's statements were not introduced for the truth of the matter asserted and are therefore not hearsay. *See Angleton v. State*, 686 N.E.2d 803, 809 (Ind.1997), *reh'g denied.* Moreover, even if Howard's statements amounted to hearsay, their admission would still result in harmless error. The record reflects that officers searched Howard prior to the undercover buy and determined that he did not have drugs on him. They followed him to Lehman's residence. After the purchase was completed, Howard gave the officers the purchased drugs. Furthermore, Officer Hacker testified that during the August 20 buy, he noticed Lehman walk up to Howard's car. A factfinder could reasonable infer from this circumstantial evidence that Lehman was guilty as charged.

### B. *Right to Confront Witnesses*

Next, Lehman objects to the trial court's admission of Howard's audiotaped statements because it violated his right to

---

1. Lehman refers to our decision in *Koenig v. State*, 916 N.E.2d 200 (Ind.Ct.App.2009), *reh'g denied*, to persuade this court that he properly preserved his hearsay objection. In *Koenig*, Koenig challenged the admissibility at trial of a lab report based on unspecified hearsay and foundational grounds. *Id.* at 202. On appeal, he argued that his constitutional right to confront witnesses was violated. *Id.* We concluded that because there is a close relationship between hearsay and confrontation, Koenig had properly preserved his confrontation clause argument through his unspecified hearsay objection before the trial court. *Id.* We find *Koenig* inapplicable. Here, Lehman points to several of his inadequate objections and attempts to persuade us that he properly preserved these claims by way of a proper objection to the August 5 audiotape on confrontation clause grounds. We refuse to read *Koenig* that broadly.

confront and cross-examine Howard under the United States Constitution.[2] The Sixth Amendment to the United States Constitution, made applicable to the States via the Fourteenth Amendment, states: "In all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him." A witness's testimony against a defendant is thus inadmissible unless the witness appears at trial or, if the witness is unavailable, the defendant had a prior opportunity for cross-examination. *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004).

*Crawford* overturned the traditional rule announced in *Ohio v. Roberts*, 448 U.S. 56, 72, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980), which permitted hearsay statements as long as they bore what the *Roberts* opinion described as the "indicia of reliability." *Crawford*, 541 U.S. at 68, 124 S.Ct. 1354. In *Crawford*, the Supreme Court dispensed with this reliability analysis as set forth in *Roberts* and held instead that the admission of a hearsay statement made by a declarant who does not testify at trial violates the Sixth Amendment if: (1) the statement was testimonial and (2) the declarant is unavailable and the defendant lacked a prior opportunity for cross-examination. *Id.* While the *Crawford* Court intentionally refrained from defining what evidence is "testimonial," it listed three formulations of this core class of testimonial statements:

(1) ex parte in-court testimony or its functional equivalent—that is, material such as affidavits, custodial examination, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially;

(2) extrajudicial statements ... contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions;

(3) statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial.

*Pendergrass v. State*, 913 N.E.2d 703, 706 (Ind.2009), *petition for cert. filed* (citing *Crawford*, 541 U.S. at 51–52, 124 S.Ct. 1354).

*Crawford* emphasized that the Sixth Amendment's very essence is to protect against abuses of government officials. *Pendergrass*, 913 N.E.2d at 706. "Involvement of government officers in the production of testimony with an eye toward trial present unique potential for prosecutorial abuse—a fact borne out time and again throughout a history with which the Framers were keenly familiar." *Crawford*, 541 U.S. at 56 n. 7, 124 S.Ct. 1354. The opinion later claimed that the "Framers would be astonished to learn that *ex parte* testimony could be admitted against a criminal defendant because it was elicited by 'neutral' government officers." *Id.* at 66, 124 S.Ct. 1354. Therefore, according to *Crawford*, the text, taken with traditional exceptions, means that the Sixth Amendment does not permit the admission of "testimonial" statements of a witness who does not appear at trial unless he or she is unavailable to testify and the defendant had a prior opportunity for cross-examination. *Id.* at 53–54, 124 S.Ct. 1354.

Since *Crawford*, the Supreme Court has clarified incrementally the definition of

---

**2.** Although Lehman states that he makes a similar claim under the Indiana Constitution, he only analyzed his contention under the United States Constitution. We will do the same.

"testimonial." It first excluded from "testimonial" statements whose primary purpose is to enable police assistance but not statements made to police during an investigation. *Davis v. Washington,* 547 U.S. 813, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006). *Davis* clarified that the testimonial statements are those that are substitutes for live testimony, that is "they do precisely what a witness does on direct testimony. . . ." *Id.* at 830, 126 S.Ct. 2266. Because "[n]o 'witness' goes into court to proclaim an emergency and seek help," statements seeking help during an emergency do not classify as "testimonial." *Id.* at 828, 126 S.Ct. 2266. By contrast, in the companion case to *Davis, Hammon v. Indiana,* where the prosecution sought to enter an affidavit by the alleged victim based on conversations with the police in their investigation, the Confrontation Clause barred admission because the officer was seeking to find out "what happened," not "what is happening." *Davis,* 547 U.S. at 830, 126 S.Ct. 2266.

The record reflects that at the beginning and end of the August 5 audiotape, Officer Slagel asked Howard to describe the deal. Howard stated that he had arranged to purchase 3.5 grams of cocaine from Lehman at a purchase price of $150. At the end of the tape, Howard described that he had made arrangements with Lehman for the purchase of an "eight ball of cocaine," went to Lehman's residence, and that Lehman "served [him] up three and a half." (Tr. p. 418). At the end of the August 20 audiotape, Howard mentioned that he met Lehman who gave him "ten Adderral, twenty milligrams for fifty dollars." (Tr. p. 436).

We agree with the State that these statements, made at the beginning and end of both audiotapes, qualify as testimonial. The statements were made with a view to be used prosecutorially or were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial. *See Crawford,* 541 U.S. at 51–52, 124 S.Ct. 1354. As such, in order to be admissible, Howard had to testify at trial or had to have been available for cross-examination by Lehman prior to trial. Howard was neither.

However, we conclude that the admission of these testimonial statements was harmless error. As with the previous issue, other evidence establishes that the officers set up a controlled buy with Howard, searched Howard, followed him to Lehman's residence, and when Howard returned to the prearranged meeting place, Howard had drugs on him. During the August 20 controlled buy, Officer Hacker testified that he saw Lehman walk up to Howard's vehicle. This evidence would be sufficient for a factfinder to find Lehman guilty as charged.

### CONCLUSION

Based on the foregoing, we conclude that the trial court properly admitted the deceased confidential informant's statements.

Affirmed.

CRONE, J., concurs.

VAIDIK, J., concurs in result with separate opinion.

VAIDIK, Judge, concurring in result.

I agree with the majority's overall conclusions and its disposition of this case. In particular, I agree that the statements confidential informant Howard made before and after each drug transaction constituted testimonial hearsay and were admitted in violation of Lehman's confrontation rights. I also concur that use of these statements at trial constituted harmless error. I write sepa-

rately to raise some additional points about the statements Howard made during the drug deals themselves.

The following are excerpts of the recorded conversations between Howard and Lehman. This first exchange took place during the August 5th transaction:

DEFENDANT LEHMAN: So, you wanna take two sixteen's?

[HOWARD]: What do you mean?

DEFENDANT LEHMAN: (INAUDIBLE) eights.

[HOWARD]: Does it matter? I mean . . . (sic).

DEFENDANT LEHMAN: (INAUDIBLE) splitting in half if you want the sixteen's.

[HOWARD]: (INAUDIBLE) ain't done nothing (INAUDIBLE).

DEFENDANT LEHMAN: I can weigh it.

[HOWARD]: (INAUDIBLE) they make em in thirty five, right?

DEFENDANT LEHMAN: Yeah. That's 1.2 and . . . (INAUDIBLE).

[HOWARD]: (INAUDIBLE) all that shit man. (INAUDIBLE) around and running around (INAUDIBLE) it's a seventy (70) (INAUDIBLE).

DEFENDANT LEHMAN: (INAUDIBLE) that's what I'm saying.

[HOWARD]: (INAUDIBLE) make a little bit off of it.

DEFENDANT LEHMAN: Yeah.

[HOWARD]: Is it really good though?

DEFENDANT LEHMAN: Yeah.

[HOWARD]: Because I don't want to like tell . . . tell (INAUDIBLE) seventy (70) and it be like . . . (sic).

DEFENDANT LEHMAN: It's really good. I'm telling ya (sic) straight up.

 * * * * * *

DEFENDANT LEHMAN: That was 1–2.

[HOWARD]: Huh?

DEFENDANT LEHMAN: That was 1–2. (INAUDIBLE) let's see, I'll just give you (INAUDIBLE).

[HOWARD]: Uh, nah, nah, that's cool. (INAUDIBLE). I can go home and break it up. I gone one (INAUDIBLE) at home and (INAUDIBLE). It was at 2.9 and now it's 1.6. (INAUDIBLE) Sometimes they like to taper. Its . . . I usually don't even (INAUDIBLE) go home and (INAUDIBLE).

DEFENDANT LEHMAN: Let's try this.

[HOWARD]: What about putting (INAUDIBLE)?

DEFENDANT LEHMAN: Yeah.

[HOWARD]: (INAUDIBLE)

DEFENDANT LEHMAN: Yeah.

UNKNOWN FEMALE: (INAUDIBLE)

[HOWARD]: I'm just going to take this off.

DEFENDANT LEHMAN: Huh?

[HOWARD]: Take that ten (10) off (INAUDIBLE).

DEFENDANT LEHMAN: Yeah. (INAUDIBLE)

 * * * * * *

DEFENDANT LEHMAN: Which one you want? The one that (INAUDIBLE) chunk (INAUDIBLE) pounder or the (INAUDIBLE)

[HOWARD]: I like the chunk. . . .

Tr. p. 406–11. The next exchange took place during the August 20th transaction:

[HOWARD]: (on phone) Hey, what's up? I'm outside man. Yeah. You

got ten (10) of 'em? Huh? All right. Later.

\*　　\*　　\*　　\*　　\*　　\*

[HOWARD]: I never seen these ... these twenties (20's)?

DEFENDANT LEHMAN: Yeah.

[HOWARD]: I only seen the thirties (30's).

DEFENDANT LEHMAN: That's what you're lookin' at (INAUDIBLE) thirties (30's).

[HOWARD]: My dude said they make 'em too, though, so I don't know.

DEFENDANT LEHMAN: (INAUDIBLE) you going?

[HOWARD]: I gotta run these and then I gotta go to school. I gotta go pick up a dude then go to school.

DEFENDANT LEHMAN: All right.

[HOWARD]: But he might want some more of 'em. I don't know.

DEFENDANT LEHMAN: I just got (INAUDIBLE).

[HOWARD]: Cool. Later man.

*Id.* at 434–35.

The issue here is whether Howard's statements during the drug deals constituted inadmissible hearsay and whether their introduction at trial violated Lehman's Sixth Amendment confrontation rights. I should first observe that the Confrontation Clause "does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted." *Crawford v. Washington,* 541 U.S. 36, 59 n. 9, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004) (citing *Tennessee v. Street,* 471 U.S. 409, 414, 105 S.Ct. 2078, 85 L.Ed.2d 425 (1985)). So if the statements in question were admissible for a valid non-hearsay purpose, then Lehman's confrontation rights are not implicated. *See also United States v. James,* 487 F.3d 518, 525 (7th Cir.2007) ("[T]he Sixth Amend-

ment poses no bar to the admission of non-hearsay statements." (citing *Crawford,* 541 U.S. at 59 n. 9, 124 S.Ct. 1354)).

The majority relies on *Williams v. State,* 669 N.E.2d 956, 958 (Ind.1996), to conclude that Howard's statements were not offered for their truth. The majority reasons that Howard's statements were largely designed to prompt Lehman and that Lehman's statements constituted the evidentiary weight of the conversation.

I write only to point out that *Williams* was decided before *Crawford,* and that there is perhaps a stronger explanation as to why the informant's remarks are not hearsay. Howard's statements constituted legally operative conduct. *See* 30A Charles Alan Wright & Kenneth W. Graham, Jr., *Federal Practice & Procedure* § 6371.2 n. 493 (Supp. 2009). His words, in conjunction with his and Lehman's physical interaction, consummated the illegal sale of drugs. *See id.; see also* 2 Kenneth S. Broun, *McCormick on Evidence* § 249 (6th ed. 2006) ("Explanatory words which accompany and give character to the transaction are not hearsay when under the substantive law the pertinent inquiry is directed only to objective manifestations rather than to the actual intent or other state of mind of the actor."). The statements were thus not hearsay, and since they were admissible for a purpose other than establishing their truth, their admission did not violate Lehman's confrontation rights.

For the foregoing reasons, I concur in the result reached by the majority.