## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Mar 30 2015, 9:55 am

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Matthew J. McGovern
Anderson, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Eric P. Babbs
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Leroy D. Brown,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

March 30, 2015

Court of Appeals Case No.
22A01-1407-CR-333

Appeal from the Floyd Superior Court

The Honorable Susan L. Orth, Judge

Cause No. 22D01-0504-FB-237

**Brown, Judge.**

Leroy D. Brown appeals the revocation of his probation. Brown raises two issues, which we revise and restate as:

I. Whether the trial court committed fundamental error by admitting certain hearsay testimony at the revocation hearing; and

II. Whether the trial court abused its discretion in ordering Brown to serve his previously suspended sentence.

We affirm.

### Facts and Procedural History

On August 17, 2005, Brown and the State entered into a plea agreement whereby Brown agreed to plead guilty to conspiracy to commit dealing in cocaine as a class B felony. On January 25, 2006, he was sentenced pursuant to the plea agreement and was placed on supervised probation for five years and four months. The terms of his probation included the following:

1. Maintain good behavior
2. You shall make an appointment with the Probation Officer of this Court within 7 days from sentencing or release date. Thereafter, you shall report to her as she shall direct.
3. You must not commit another criminal offense.

* * * * *

10. You shall not possess any firearm or other deadly weapon . . . .

* * * * *

12. You shall remain within the jurisdiction of this court unless granted written permission to leave by your probation officer.

State's Exhibit 1 at 3. He further was required to perform forty-eight hours of community service and pay a monthly probation user fee of thirty dollars.

[3]     A petition to revoke probation was filed against Brown on February 24, 2006, for failing to maintain good behavior, to report to his probation officer as directed, to complete community service, and to remain in the jurisdiction of the court without permission to leave from his probation officer. A revocation hearing was held on May 9, 2007, and four months of Brown's probation was revoked, leaving a remaining suspended sentence of five years to be served on probation. On February 2, 2009, a notice of probation violation was filed against Brown for failing to report to probation as directed, noting that he had not reported since October 2, 2008, to complete community service hours, and to pay delinquent probation fees totaling $540. On March 2, 2011, Brown stipulated to the violation of probation, and the trial court continued him on probation with all conditions remaining the same.

[4]     On March 19, 2012, another petition to revoke probation was filed against Brown stating that Brown failed to maintain good behavior, that he violated state or federal law and referencing an October 2011 guilty plea to fourth-degree assault occurring on September 26, 2011, in Kentucky, that he failed to report to probation as directed, and that he was delinquent in his payment of fees, including owing $780 in probation fees and $250 in alcohol and drug program fees. On June 18, 2012, an amended notice of probation violation was filed against Brown which included new charges against him. Specifically, the new charges were also filed in Kentucky and included convicted felon in possession of a handgun, receiving stolen property (firearm), and tampering with physical evidence. The amended notice also indicated that Brown owed $880 in

probation monthly fees.  On September 17, 2012, a second amended notice of probation violation was filed against Brown to include a charge of attempted murder as a class A felony committed on September 11, 2012, in Floyd County, Indiana.

[5] On July 16, 2014, the court held a revocation hearing at which, at the outset, Brown moved to continue the hearing until after trial on the attempted murder charge, and the court denied his motion, stating that "if the only . . . allegation for a probation violation was the pending case I would certainly . . . entertain your request . . . .  But because there are other allegations I'm gonna deny the request . . . ." Transcript at 5-6.  Rexann Farris, the Chief Probation Officer for the Floyd County Probation Department, testified that the last contact between Brown and the probation department occurred on August 23, 2012, and that he missed his appointment on September 20, 2012.  During Farris's testimony, the State offered and the court admitted an arrest warrant issued by the Commonwealth of Kentucky for assault in the fourth degree regarding the September 26, 2011 incident indicating that Brown followed the victim to her home and a physical altercation took place in which the victim "received two black eyes, bruised nose from fist strikes from [Brown] and has bruising on back from where she was dragged into courtyard of apartment by" Brown.  State's Exhibit 2 at 8.  The warrant also indicated that "[t]here is an active court case . . . against [Brown] where [he] was ordered to have no contact with victim as a condition of release." *Id.*  She also testified that Brown was delinquent in his payment of fees and that he had been charged with attempted murder.

[6]     The State next called Sergeant Gary Humphrey of the New Albany Police Department who testified that he was on call an evening in September 2012 when a man named Allen Vancliff had been shot and, when he arrived on the scene, he was notified by Officer Paul Haub that Vancliff had been shot in the left cheek at Zack's Food Mart and that they found a bullet and a tooth at the scene. Sergeant Humphrey testified that he went to the hospital to speak with Vancliff within an hour of the shooting, and he again spoke with him at the hospital the next day, as well as in a recorded statement given at the police station. He testified that the doctor told him that the doctor believed a small caliber handgun caused the injury to the cheek and the missing tooth. He testified that Vancliff told him that Brown "approached him in the parking lot of Zack's and . . . said, 'I heard you got a problem with me,'" that "Vancliff said, 'I don't have a problem with you,'" and that, in Vancliff's estimation, Brown then fired about six shots during which he was shot in the cheek. Transcript at 24. He testified that Vancliff told him he then ran inside Zack's Food Mart. Vancliff also told Sergeant Humphrey that he had known Brown for several years.

[7]     Sergeant Humphrey also testified that officers spoke with other witnesses, including Breia McBirth who "had been a girlfriend of Leroy Brown's for sometime and she stated that she was on the parking lot and saw . . . Brown approach [Vancliff] and heard him saying basically what we already been told, 'You got a problem with me?' 'I don't have a problem with you.'" *Id.* at 25. McBirth stated that she "heard several shots [] ring out and that she took off."

*Id.* Sergeant Humphrey testified that he also completed a taped interview of a woman named Kayla Roberts within two days of the shooting, who stated that she knew both Brown and Vancliff and that Brown was at the scene, and Roberts corroborated the stories of Vancliff and McBirth. Roberts told him that she saw Brown shoot Vancliff and specifically that she "saw a small black handgun [] in Leroy Brown's hand" and saw that Vancliff "kind of fell back and grabbed his face and then ran into Zack's." *Id.* at 28.

[8] Sergeant Humphrey testified that he located Brown by working with "the cellphone company" to locate Brown's cellphone. *Id.* During the search of the residence where Brown was found, Sergeant Humphrey found a duffle bag belonging to Brown containing several ".22 unspent shell bullets," which were "consistent with the small caliber weapon that . . . was fired at" Vancliff, and Brown admitted that they belonged to him. *Id.* at 29. Sergeant Humphrey testified that he took a statement from Brown at the police station and that, although Brown admitted to having "bad blood" between him and Vancliff, "he would not admit to the shooting" or being at the scene of the shooting. *Id.* at 30. He testified that Brown initially denied owning either a gun or bullets, but he eventually admitted that he owned the bullets. On cross-examination, Sergeant Humphrey testified that he had not spoken with Vancliff regarding the shooting for "[a]bout a year and a half," that he had not "had any conversations with Ms. Roberts," and that he did not interview McBirth but was familiar with her story from another officer's report. *Id.* at 33, 36.

[9]     The court ordered that Brown serve the previously-suspended five year term in the Department of Correction, stating as follows:

> [T]wo (2) of the most serious violations, in my opinion, are first, failing to report. Uh, when you fail to report your probation officer has no idea what you're doing and has no ability to monitor or guide your behavior. Uh, and in this regard you had not reported since August of 2012. Uh, I am considering as mitigating the length of time in which you did successfully report, and that is, albeit, a number of years. Uh, but when you dropped off the radar you dropped off the radar and that's when everything really . . . went south.
>
> [T]he second, uh, thing I consider as a serious violation is the commission of a new offense, and that was in October of 2011, uh, which is obviously a serious violation and-and defeats the purpose of probation. Uh, and in your regard it was also a conviction of violence, uh, with an injury. Uh, and secondly, was a violation of conditions of release. . . . [T]here was a no contact order and the victim in that matter was the person that was subject to the no contact order, uh, which I find to be a serious violation. It shows me that-that not only can you not follow court orders or choose not to, that you cannot comply with conditions of release or conditions of probation. Uh, and this is not just a conviction, but it's one that is outside the jurisdiction and outside of this state, which I also do take note.
>
> Uh, I'm also considering the Floyd County arrest of 2012, uh, where you were identified as shooting a man in the face. The allegations that six (6) shots were fired at this person, which to me shows intent to harm and not something that's incidental or accidental. Also shows possession of a handgun, uh, which is a violation. And uh, firing shots at a person causing injury. Uh, this also occurred across the street from public housing and next to a school. Uh, it's an area that is very, very high traffic area no matter what time of the day or night. Um, and based upon the testimony of Officer Humphrey I find by a preponderance of the evidence that you were the shooter of Mr. Vancliff.

*Id.* at 47-48.

### *Discussion*

### I.

[10] The first issue is whether the court committed fundamental error by admitting hearsay testimony by Sergeant Humphrey at the revocation hearing. Brown argues that "[t]he State failed to establish the reliability of" Vancliff and Roberts, noting that Sergeant Humphrey had not spoken with Vancliff for approximately one and one-half years and "defense counsel had been unable to locate Vancliff to take his deposition in anticipation of trial," and that Roberts's credibility had not been established because "[t]he only evidence offered by the State . . . is that she 'knew the parties involved' . . . ." Appellant's Brief at 7-8. He asserts that "the trial court failed to make a record regarding the reliability of Officer Humphrey's hearsay evidence as recommended by our Supreme Court in" *Reyes v. State*, 868 N.E.2d 438, 442 (Ind. 2007), *reh'g denied*. *Id.* at 8. He further argues that this error constituted fundamental error because "the only evidence to support that Brown shot Vancliff, the most serious accusation against Brown in this revocation proceeding, was the hearsay testimony of Officer Humphrey." *Id.* at 9.

[11] The State argues that the "court did not commit any error, much less fundamental error, by admitting hearsay to substantiate one of the several violations of Brown's probation." Appellee's Brief at 10. It asserts that "Brown's claim that the witness statements related in Officer Humphrey's testimony were unreliable is wholly unpersuasive," noting specifically that the various statements' trustworthiness "was shown by the fact that the witnesses

all gave Officer Humphrey consistent accounts of the shooting." *Id.* The State further notes that .22-caliber ammunition was found in Brown's duffle bag, which was consistent with Vancliff's injury and the description of the weapon provided by Roberts. The State argues that "Brown also displayed consciousness of guilt when he falsely told the officers that he did not own any shells." *Id.* at 11. The State maintains that "the admission of the hearsay did not even affect Brown's substantial rights because the trial court relied upon other violations of probation to support its decision . . . ." *Id.* at 12.

[12] As the State observes and Brown concedes, Brown did not object to this testimony at the hearing. Generally, the failure to object to evidence results in waiving a challenge to its admission on appeal. *See Marsh v. State*, 818 N.E.2d 143, 145 (Ind. Ct. App. 2004) (noting that failure to object to hearsay evidence at probation revocation hearing waives issue for appeal). Seeking to avoid procedural default, Brown claims that the trial court's admission of the testimony constitutes fundamental error. The fundamental error doctrine is extremely narrow and applies only when the error amounts to a blatant violation of basic principles, the harm or potential for harm is substantial, and the resulting error denies the defendant fundamental due process. *Lehman v. State*, 926 N.E.2d 35, 38 (Ind. Ct. App. 2010), *reh'g denied*, *trans. denied*.

[13] Indiana Evidence Rule 101(c)(2) allows for the admission of evidence during probation revocation hearings that would not be permitted in a full-blown criminal trial. Yet, "[t]his does not mean that hearsay evidence may be admitted willy-nilly in a probation revocation hearing." *Reyes*, 868 N.E.2d at

440. In *Reyes*, the Indiana Supreme Court adopted the substantial trustworthiness test as the means for determining whether hearsay evidence should be admitted at a probation revocation hearing. In applying the substantial trustworthiness test, "'ideally [the trial court should explain] on the record why the hearsay [is] reliable and why that reliability [is] substantial enough to supply good cause for not producing . . . live witnesses.'" *Id.* at 442 (quoting *United States v. Kelley*, 446 F.3d 688, 693 (7th Cir. 2006)). Failure to provide an explanation on the record is not fatal where the record supports such a determination. *Id.*

[14] In this case, Brown's failure to object deprived the court of the opportunity to make a substantial trustworthiness determination. Nevertheless, the transcript of the revocation hearing reveals that the evidence would support a determination that the testimony offered by Sergeant Humphrey was substantially trustworthy. He testified that he interviewed Vancliff multiple times and took a recorded statement regarding the events of the shooting. Vancliff's doctor told Sergeant Humphrey that he believed a small caliber handgun caused the injury to the cheek and the missing tooth. Sergeant Humphrey testified that Vancliff and Roberts each recounted that a verbal exchange between Brown and Vancliff took place in which Brown stated "I heard you got a problem with me" and Vancliff responded "I don't have a problem with you," and that McBirth further corroborated this story to another officer. *See* Transcript at 24-27. Roberts also told Sergeant Humphrey that she "saw a small black handgun [] in Leroy Brown's hand" and saw Vancliff "kind

of fell back and grabbed his face and then ran into Zack's." *Id.* at 28. The trustworthiness of these statements is further corroborated by the fact that when Sergeant Humphrey came upon Brown he was found to have ".22 unspent shell bullets" in a duffle bag which were "consistent with the small caliber weapon that . . . was fired at" Vancliff, and Brown admitted that they belonged to him. *Id.* at 29. Brown initially denied owning either a gun or bullets, but he eventually admitted to Sergeant Humphrey that he owned the bullets.

[15] Even if we were to determine that the statements admitted into evidence during Sergeant Humphrey's testimony were not substantially trustworthy, however, we would not find that such error amounted to fundamental error. The trial court, in revoking Brown's probation and imposing five years as executed time, began by stating that, in its opinion, "two (2) of the most serious violations" were for failing to report and the commission of the October 2011 fourth-degree assault in Kentucky. *Id.* at 47. The challenged statements do not relate to either of these violations of Brown's probation, which technically amounted to three violations of the terms of his probation because the Kentucky offense constituted both the commission of a criminal offense as well as leaving Indiana. We cannot say that Sergeant Humphrey's testimony, even assuming it constituted inadmissible hearsay, prejudiced Brown's substantial rights. *Cf. Carden v. State*, 873 N.E.2d 160, 164 (Ind. Ct. App. 2007) (holding that the admission of certain hearsay statements constituted fundamental error where such statements were not substantially trustworthy and were "the *only* evidence used to revoke Carden's probation").

[16]    The next issue is whether the trial court abused its discretion in ordering Brown to serve his previously suspended sentence. Brown argues that this court may "determine[] the reasonableness of the revocation order by examining the character of the probationer and the nature of the probation violation." Appellant's Brief at 11 (citing *Sanders v. State*, 825 N.E.2d 952, 957 (Ind. Ct. App. 2005), *trans. denied*). He argues "[w]ith regard to the nature of Brown's probation violations, this Court should conclude that the revocation of all of [his] suspended sentence constitutes an abuse of discretion" and that "[a]s noted above, the trial court considered a probation violation that was based entirely on unreliable hearsay evidence" which was "by far the most serious charge against" him. *Id.* He states that the Kentucky offense "was only . . . a misdemeanor offense." *Id.* He further contends that "[t]here is little evidence of [his] character in the record; however, as noted above, with the exception of the shooting offense that should not have been considered, there is no indication that [his] character is sufficiently lacking to justify the revocation of his entire sentence." *Id.* at 12. He requests that this court "revoke only three and one-half years . . . and reinstate one and one-half years of probation . . . ." *Id.*

[17]    The State argues that "Brown does not seriously dispute that he violated his probation" and indeed concedes several of the violations, including the failure to report and the conviction for fourth-degree assault in Kentucky. Appellee's Brief at 8. The State notes that the Kentucky conviction was a crime of

violence and occurred in a different state, which is a violation in and of itself. *Id.* The State asserts that he further violated his probation when he shot Vancliff in the face, which violated his probation by not maintaining good behavior nor committing another criminal offense, and further by possessing a firearm in violation of his probation.

[18] Ind. Code § 35-38-2-3(h) sets forth a trial court's sentencing options if the trial court finds a probation violation and provides:

> If the court finds that the person has violated a condition at any time before termination of the period, and the petition to revoke is filed within the probationary period, the court may impose one (1) or more of the following sanctions:
>
> > (1) Continue the person on probation, with or without modifying or enlarging the conditions.
> >
> > (2) Extend the person's probationary period for not more than one (1) year beyond the original probationary period.
> >
> > (3) Order execution of all or part of the sentence that was suspended at the time of initial sentencing.

[19] The Indiana Supreme Court has held that a trial court's sentencing decisions for probation violations are reviewable using the abuse of discretion standard. *Prewitt v. State*, 878 N.E.2d 184, 188 (Ind. 2007). The Court explained that "[o]nce a trial court has exercised its grace by ordering probation rather than incarceration, the judge should have considerable leeway in deciding how to proceed" and that "[i]f this discretion were not afforded to trial courts and sentences were scrutinized too severely on appeal, trial judges might be less inclined to order probation to future defendants." *Id.* An abuse of discretion

occurs where the decision is clearly against the logic and effect of the facts and circumstances. *Id.* (citation omitted). As long as the proper procedures have been followed in conducting a probation revocation hearing, "the trial court may order execution of a suspended sentence upon a finding of a violation by a preponderance of the evidence." *Goonen v. State*, 705 N.E.2d 209, 212 (Ind. Ct. App. 1999).

[20] Initially, to the extent that Brown suggests that this court should apply a nature of the offense and character of the offender analysis akin to reviewing a sentence under Ind. Appellate Rule 7(B), we note that this court in *Sanders* observed that the Indiana Supreme Court in *Stephens v. State*, 818 N.E.2d 936 (Ind. 2004), "reviewed whether the defendant's sentence imposed following the revocation of his probation was 'unreasonable given the nature of the violations and the character of the offender.'" *Sanders*, 825 N.E.2d at 957 (quoting *Stephens*, 818 N.E.2d at 943). Against the defendant's urging, this court refused to apply the Ind. Appellate Rule 7(B) standard, holding that "we believe—given our existing caselaw . . . that the standard of review used when reviewing whether a defendant's probation revocation sentence is unreasonable is an abuse of discretion." *Id.* Soon after, the Indiana Supreme Court in *Prewitt* cited *Sanders* approvingly for the proposition that "a trial court's sentencing decisions for probation violations are reviewable using the abuse of discretion standard." *Prewitt*, 878 N.E.2d at 188. Thus, we apply an abuse of discretion standard.

[21] The record reveals that Brown has violated his probation numerous times. He previously had his probation revoked on this same conviction on May 9, 2007,

and was ordered to serve four months of his previously-suspended sentence. On March 2, 2011, Brown stipulated to violating his probation for failing to report, and the trial court continued him on probation with all conditions remaining the same. He again failed to maintain contact with the probation department after August 23, 2012, and missed an appointment on September 20, 2012. Also, Brown pled guilty to assault in the fourth degree in October 2011 in Kentucky regarding an episode of domestic violence. The arrest warrant admitted into evidence indicates that on September 26, 2011, Brown followed the victim to her home and a physical altercation took place in which the victim "received two black eyes, bruised nose from fist strikes from [Brown] and has bruising on back from where she was dragged into courtyard of apartment by" Brown. State's Exhibit 2 at 8. The warrant also indicated that "[t]here is an active court case . . . against [Brown] where [he] was ordered to have no contact with victim as a condition of release." *Id.* Brown was also delinquent in his payment of probation user fees and alcohol and drug program fees. Further, as discussed, Brown was found by a preponderance of the evidence to have committed attempted murder against Vancliff when he fired a handgun about six times at Vancliff which resulted in Vancliff being shot through the cheek and losing a tooth. Given the circumstances as set forth above and in the record, we cannot say that the court abused its discretion in ordering Brown to serve his previously suspended sentence. *See Milliner v. State*, 890 N.E.2d 789, 793 (Ind. Ct. App. 2008) (holding that the trial court did not abuse its discretion in reinstating the probationer's previously suspended sentence), *trans. denied*.

## *Conclusion*

[22] For the foregoing reasons, we affirm the trial court's order revoking Brown's probation and ordering that he serve his previously suspended sentence in the Department of Correction.

[23] Affirmed.

Bailey, J., and Robb, J., concur.