## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Apr 26 2017, 5:44 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

**ATTORNEY FOR APPELLANT**

Susan D. Rayl
Smith Rayl Law Office, LLC
Indianapolis, Indiana

**ATTORNEYS FOR APPELLEE**

Curtis T. Hill, Jr.
Attorney General of Indiana

Eric P. Babbs
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Stephanie Harris,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

April 26, 2017

Court of Appeals Case No.
49A02-1608-CR-1797

Appeal from the Marion Superior Court.
The Honorable Marc T. Rothenberg, Judge.
The Honorable Amy J. Barbar, Magistrate.
Cause No. 49G02-1507-F5-25547

**Friedlander, Senior Judge**

[1] Stephanie Harris appeals her conviction of burglary as a Level 5 felony.[1] We affirm.

[2] Harris presents three issues for our review, which we restate as two:

> 1. Whether the trial court erred by admitting certain testimony at trial.
> 2. Whether the State erred by filing criminal charges in this action.

[3] The facts most favorable to the judgment follow. On May 28, 2015, Officer Williams-Ervin was dispatched to a residence. When he arrived, he encountered Jeannette Shaw and a mortgage inspector. Shaw explained to the officer that her mother, Floreatha McKoy, owned the house and that McKoy had given Shaw power of attorney. Shaw was attempting to gain entry to the house so the inspector could prepare his report, but she believed someone was inside the residence.

[4] She and Officer Williams-Ervin knocked on the door of the residence, and a young man answered and stated the house belonged to his mother, Harris. Officer Williams-Ervin and Shaw then talked to Harris and explained that Shaw's mother owned the house. Harris, in turn, told them that she had leased the house from Floreatha McKoy. Shaw stated that neither she nor her mother had leased the house to anyone, and Officer Williams-Ervin suggested to Harris

---

[1] Ind. Code § 35-43-2-1 (2014).

that she might have been a victim of fraud. Harris became angry and accused Shaw of being the person who leased the residence to her, although moments earlier she had inquired as to Shaw's identity.

[5] Although Harris eventually produced a lease and a receipt for payment of $5,000, she was unable to provide contact information for the person from whom she leased the house. After an investigation, officers informed a belligerent Harris on June 12, 2015 that she had to move out of the house. On July 8, officers informed Harris once again that she had to move. Harris became very angry and indicated that she was not leaving. Officers returned the next day, and Harris stated they were harassing her and could not make her leave. Finally, on July 20, 2015, when Harris had still not vacated the house, the police turned the case over to the prosecutor's office.

[6] Harris was charged with burglary, a Level 5 felony; theft, a Level 6 felony;[2] and forgery, a Level 6 felony.[3] At trial, the State proceeded on the theory that Harris had engaged in a home takeover scheme in order to inhabit the house. A jury found her guilty of burglary and theft. The trial court merged the theft conviction into the burglary conviction and sentenced Harris to five years, consisting of two years executed followed by one year of home detention and

---

[2] Ind. Code § 35-43-4-2 (2014).

[3] Ind. Code § 35-43-5-2 (2014).

two years suspended to probation. It is from this conviction that she now appeals.

[7] Harris first contends that the trial court erred in its admission of certain testimony at trial. Particularly, she argues that the trial court admitted irrelevant and prejudicial testimony and that the court improperly admitted opinion testimony concerning guilt or innocence and legal conclusions.

[8] The trial court's ruling on the admission or exclusion of evidence is reviewed for an abuse of discretion. *Cherry v. State*, 57 N.E.3d 867 (Ind. Ct. App. 2016), *trans. denied*. An abuse of discretion occurs when a decision is clearly against the logic and effect of the facts and circumstances before the court. *Paul v. State*, 971 N.E.2d 172 (Ind. Ct. App. 2012).

[9] We first address Harris' challenge to the testimony of Sergeant Walters regarding the two types of home takeover schemes and the investigation procedure for these types of cases. Harris claims that Sergeant Walters' testimony is irrelevant and highly prejudicial and, therefore, should not have been admitted.

[10] At trial, Sergeant Walters testified:

> A home takeover because in Marion County in the last two and a half years, we have experienced a – an epidemic of basic individuals that have properties either for sale or, uh, that they're vacant, going through foreclosure, uh, or just basically an abandoned house. We have individuals that are taking those houses – who have taken possession of those properties, and they basically just assume the property without going through any

kind of legal documents, any kind of contractual interests or anything like that. So, we have labeled those because there's such an epidemic of it, we've labeled them home takeovers, and because we have so many of them, our unit has been assigned specifically to deal with that because they usually deal with fraudulent documents, forgery, thefts, so on and so forth. So our unit is specifically in charge of dealing with all of the home takeovers.

Tr. pp. 55-56.

[11]   The prosecuting attorney then asked Sergeant Walters to explain "the typical investigation into one of the home takeover cases." *Id.* at 56. Defense counsel objected on the basis that the information was speculative, irrelevant, and prejudicial. The State responded that the information was relevant because the allegations in the case involve a home takeover investigation, and Sergeant Walters would testify to how that type of investigation is handled. The objection was overruled, and Sergeant Walters continued, stating that there are two types of home takeover schemes.

[12]   Defense counsel again objected:

> Defense:   Judge, he's not testifying to how he investigates. He's testifying about the schemes. This is totally meant to be prejudicial. If he wants to talk about what he did in this particular case, that's relevant. Other cases are not relevant to this case.
>
> Court:   State?
>
> State:   Judge, the detective is going to testify to how he typically handles the investigations. This case originally fell under two different types of investigations. He needs to explain what he normally does. That is incredibly relevant to the case.

Defense:    That's not what he was getting ready to testify to.

Court:    Well, I can't say exactly what he was getting ready to testify to, but it sounds like he's talking about different types of ways this can occur, and what his investigation would consist of. Is that . . .

State:    Yes.

Court:    That's what it sounds like to me. So I'm gonna overrule the objection.

*Id.* at 57-58.

[13]    Sergeant Walters then proceeded with his explanation of the ways home takeovers occur and the process of the investigation into these types of cases:

Walters:    Okay. Just to help the defense attorney, a procedural notice was established by our unit, which was – because we assign all these cases. We work all these cases. So a procedural notice for the uniform officers who respond to the home takeovers, we establish that actual criteria, and within that procedural notice is how an investigation is supposed to occur from the responding officers to the detectives when they arrive on the scene the day after to complete the investigation. So what we have – in this situation we have two different scenarios. We have scenario one, where we have a victim that is either – finds somebody on Craigslist, eBay, phone, ad; whatever it may be. They portray them self [sic] to be a leasor [sic] or an agent of that actual real estate. They set up an arrangement to meet with the soon to be victim. They get the keys to them. They show them the house. They take the deposit and off they go, and they're never heard of again. A management group or a person, the realtor, the homeowner, somebody shows up at the house. At that point, he goes hey, somebody's in my house and they shouldn't be here. They call the police. At that point, the procedural notice is for the responding officers to talk to the individual who actually calls the police, which is you the

homeowner, or property management person. Get the facts from them. At that point, they go talk to the individual inside the residence. They establish from them a, do you have any paperwork, documentation, contact information; so on and so forth. They collect that information. They contact a detective. A detective will either respond to the scene and complete the investigation from there, or we will get the paperwork the next day and go out and investigate that. That's one type of procedural notice that we follow with a house where you have a victim that was getting a property based on Craigslist or so on and so forth.

State:	So in that particular case, there's two victims then? We have –

Walters:	Exactly.

State:	– we have the primary victim who is the homeowner?

Walters:	Who's the homeowner, and the secondary victim who has been at that point given money out for a property that they had no contractual interest in.

State:	Okay. And then what is the other type of scheme that you see?

Walters:	The other scam that we have at this point within Marion County is basically it's a house going through foreclosure. It is a vacant house. It is a house for sale where people basically just come over and they assume the property, basically.

[Preliminary Questions by Defense Counsel]

Walters:	Okay, so the second one basically, individuals – big houses abandoned so on and so forth. Uh, there are several ways to look at a house to see if it's going through foreclosure; a bank, Fizbo [sic], real estate, Assessor's Office. You can see the different properties that are listed in Marion County that are going through foreclosure. Individuals basically come in, they pop a lock or somehow they get inside the residence. They

change the locks to the door. At that point, they basically assume the property and they move in with all their stuff, and they take possession of the house. That is fine until a property management group or a homeowner comes by and says hey, who's is my house? At that point there's where we have to explain, okay, what has happened here? Who owns the house? And then we have to go through an investigation as to true ownership of the house, and then find out if they have any documentation. So we have to verify, validate all the documentation they provide to us, and then we basically complete our investigation working with initially as two victims because we were gonna give the benefit of the doubt to the first – the person in the house until we disprove whether or not they had a legal right to go through there or if their story is not legitimate, and also we always work for the primary victim which is the homeowner. So that's kind of how we go with the two. One, is the secondary victim where they get something off Craigslist. The second one is they just basically take over the house, which is the tame [sic] – the term home takeover.

State:      And so you essentially start with assuming everyone is a victim –

Walters:    Correct.

State:      – who's involved?

Walters:    Correct.

State:      Whether it be the person in the home or the homeowner?

Walters:    Yes.

State:      And then you work backwards until you . . .

Defense:    Objection, Judge. Leading.

State:      It's a . . .

Court:      Overruled.

State:      And you essentially work backwards until you can determine exactly what happened?

Walters:     That's correct.

State:       And is that why you have a procedure in place that directs district officers and those who respond to the scene?

Walters:     Yes, because we have so many of these we had to be like – we – our unit, we only have twelve or thirteen people. We couldn't respond to all the amount of runs that we're getting so we created a procedural notice for that purpose for the responding officers to be able to collect that data for us, get the information, then we come back and verify it through the Assessor's Office; find out if the actual land – or the homeowner is the true homeowner by the documents in the Assessor's Office so on so forth. So that's how we begin our investigation.

State:       Okay. Now with regards to, um, these home takeovers, is it – is it typical to see that a home could be fully decorated?

Walters:     Absolutely.

State:       Okay. And why is that?

Walters:     Basically when you take over a home, if it has been vacant for a while or there's nobody – most property management groups are supposed to check a house weekly. They don't do that. So a lot of a [sic] neighborhoods have houses that are vacant that you basically, if you assume a house whether it be you're being scammed out or you take the house over yourself, you're going to keep the upkeep of it to bring no attention to you because you're now just a homeowner or a renter or leaser [sic] or so on and so forth. So you're not trying to bring any kind of negative attention your way. You keep the house and the upkeep just like you normally would if you're a legal homeowner.

*Id.* at 58-63.

[14] In challenging this testimony on appeal, Harris asserts that it is course-of-investigation evidence that should not have been admitted. Course-of-

investigation evidence is introduced to explain why police officers or investigators proceeded in a particular manner. *Kindred v. State*, 973 N.E.2d 1245 (Ind. Ct. App. 2012), *overruled on other grounds by Sampson v. State*, 38 N.E.3d 985 (Ind. 2015). This type of evidence may be irrelevant and generally consists of hearsay statements in the form of complaints and reports made to the police, upon which officers then take steps to investigate. *Id.*

[15] We first note that Harris did not object to Sergeant Walters' testimony at trial on the basis that it is improper course-of-investigation testimony. Any grounds for objections not raised at trial are not available on appeal, and a party may not add to or change her grounds in the reviewing court. *Treadway v. State*, 924 N.E.2d 621 (Ind. 2010). Further, unlike course-of-investigation testimony, Sergeant Walters' testimony did not consist of hearsay statements. Rather, Sergeant Walters was present in court and testified regarding his knowledge about the criminal activity police have labeled "home takeover" and discussed the special procedures that were developed to handle these types of cases. Therefore, we address Harris' trial objection of relevancy and prejudice as to this evidence.

[16] Relevant evidence is evidence having any tendency to make a fact, that is of consequence in determining the action, more or less probable than it would be without the evidence. Ind. Evidence Rule 401. Additionally, although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. *See* Evid. R. 403. The standard set forth in Rule 401 is a liberal one, and the trial court's ruling on relevance is

reviewed for an abuse of discretion. *Patton v. State*, 725 N.E.2d 462 (Ind. Ct. App. 2000). Further, trial courts are given wide latitude in weighing probative value against prejudicial effect, and that decision is reviewed for an abuse of discretion as well. *Id.*

[17] Sergeant Walters' testimony was relevant to explain the complex criminal scheme involved in this case. He explained the nature of the scheme, the ways in which takeovers occur, and the different parties that can be involved. He also described the procedures that his department has developed because it is so prevalent and police resources are limited. All of this information aided the jury in understanding what was most likely an unfamiliar topic and was helpful as the jury sorted through the facts of this case. This is especially true given that both types of home takeovers are addressed in this case. The State proceeded with its case on the theory that Harris was providing fraudulent rental documents in order to take over the home, as Walters described in the second type of takeover. On the other hand, Harris claimed that she was a victim also, as Walters described in the first type of takeover.

[18] In addition, the probative value of Sergeant Walters' challenged testimony was not substantially outweighed by the danger of unfair prejudice. It provided background information of the general nature of the offense and the procedures for any ensuing investigation without relating the information to Harris or this specific case. Moreover, his testimony set up the framework for Harris to claim that she was a victim to a scammer who posted the listing on Craigslist and

posed as McKoy to rent her the house. The trial court did not abuse its discretion by admitting this testimony.

[19] Harris also alleges error with the trial court's admission of the testimony of Officer Williams-Ervin and additional testimony of Sergeant Walters. Although Harris filed, and the trial court granted, a pretrial motion in limine regarding testimony of opinions of guilt or innocence or legal conclusions, Harris failed to lodge any objections when this testimony was presented at trial. Thus, Harris' claim of error is waived. *See Peaver v. State*, 937 N.E.2d 896 (Ind. Ct. App. 2010) (failure to object at trial to admission of evidence results in waiver of error, notwithstanding prior motion in limine), *trans. denied*.

[20] To avoid waiver, Harris claims that admission of the testimony constitutes fundamental error. The fundamental error doctrine is extremely narrow and applies only when the error amounts to a blatant violation of basic principles, the harm or potential for harm is substantial, and the resulting error denies the defendant fundamental due process. *Lehman v. State*, 926 N.E.2d 35 (Ind. Ct. App. 2010), *trans. denied*. This doctrine is available only in egregious circumstances. *Brown v. State*, 929 N.E.2d 204 (Ind. 2010).

[21] Harris argues that the testimony amounts to evidence of legal conclusions and opinions on her guilt or innocence prohibited by Evidence Rule 704(b). The Rule provides:

> Witnesses may not testify to opinions concerning intent, guilt, or innocence in a criminal case; the truth or falsity of allegations; whether a witness has testified truthfully; or legal conclusions.

Evid. R. 704(b).

[22] First, Harris claims that Officer Williams-Ervin's testimony was a prohibited opinion of her guilt. On redirect examination, Officer Williams-Ervin was asked his assessment of the case given that the non-homeowners in these types of cases can either be victims of fraud or squatters. He responded, "Um, after – based on my, my experience with the two, um, that this person was squatting in the residence based on their behavior given, given the fact that we tried to explain what, what – they were possibly a victim here, and that she didn't – she didn't act, um, in the way that I have seen victims act. She was more angry than remorseful or sad, and that she had been the victim." Tr. pp. 26-27.

[23] In making this argument, Harris overlooks the fact that defense counsel addressed the topic of Harris as a victim of fraud during cross-examination of Officer Williams-Ervin. Defense counsel questioned the officer as follows:

| Defense: | Right? Um, she produced a lease? |
| Williams-Ervin: | Yes. |
| Defense: | You have no knowledge of who prepared that lease? |
| Williams-Ervin: | No. |
| Defense: | You, you can't say that Ms. Harris prepared that lease? |
| Williams-Ervin: | I cannot. |
| Defense: | All you know is that Ms. Harris produced the lease? |
| Williams-Ervin: | Yes. |
| Defense: | On the day that you came there requesting it? |

| | |
|---|---|
| Williams-Ervin: | Yes. |
| Defense: | And she produced a receipt? |
| Williams-Ervin: | Yes. |
| Defense: | And she became upset when she – when she advised that she had paid a large sum of money to stay at that residence? |
| Williams-Ervin: | Yes. |

******

| | |
|---|---|
| Defense: | You testified earlier that this type of situation happens often, or you've encountered it often? |
| Williams-Ervin: | Yes. |
| Defense: | Where individuals are rented properties only later to be found out that the transaction was fraudulent? |
| Williams-Ervin: | Yes. |
| Defense: | So this is not uncommon? |
| Williams-Ervin: | No. |
| Defense: | And the person who actually rents the property, are they victims of the crime themselves? |
| Williams-Ervin: | The person that pays the money? |
| Defense: | Yes, sir. |
| Williams-Ervin: | Yes. |
| Defense: | So they're a victim? |
| Williams-Ervin: | Yes. |
| Defense: | Not a criminal? |
| Williams-Ervin: | Absolutely. |
| Defense: | They, they – would you say that they were taken advantage of? |

| Williams-Ervin: | Yes. |
| Defense: | Would you say that they were naïve? |
| Williams-Ervin: | I – yes. |
| Defense: | They're not normally prosecuted? |
| Williams-Ervin: | No. |

*Id.* at 22-23. The State then elicited the challenged testimony on redirect examination in response to defense counsel's line of questioning concerning Harris' status as a victim.

[24] Even if the testimony in question was an impermissible opinion of Harris' guilt, the State was merely rebutting the defense's suggestion that Harris was also a victim in this case who should not have been charged criminally. *See Robey v. State*, 7 N.E.3d 371 (Ind. Ct. App. 2014) (State is entitled to respond to allegations and inferences raised by defense even if response would be otherwise objectionable), *trans. denied*. Moreover, the jury found Harris not guilty of forgery, thus suggesting its belief that Harris was a victim of a fraudulent lease. Accordingly, we conclude these circumstances do not establish fundamental error.

[25] Harris further contends that the testimony of both Officer Williams-Ervin and Sergeant Walters amounted to prohibited legal conclusions that she did not have a contractual interest in the property and that she had exercised unauthorized control over the property. In support of her argument, she cites Officer Williams-Ervin's testimony that "the defense wasn't able to demonstrate to us that [Harris] had contractual interest in the property." Tr. p. 16. Officer

Williams-Ervin made this statement on direct examination in response to the question, "After you called the detectives, what did you do next?" *Id.* The officer then responded: "After I called the detectives, I explained to them that I believed that I had probable cause to make an arrest at this residence for trespassing, um, given the fact that the defense wasn't able to demonstrate to us that she had contractual interest in the property." *Id.* Taken in context, it is evident that this statement was an explanation of the officer's actions at that point in the investigation rather than an impermissible legal conclusion. We find no error.

[26] Harris also cites numerous sections of Sergeant Walters' testimony; however, much of this testimony was elicited by Harris, thereby constituting invited error. The invited error doctrine forbids a party to take advantage of an error that she commits, invites, or which is the natural consequence of her own neglect or misconduct. *Nichols v. State*, 55 N.E.3d 854 (Ind. Ct. App. 2016), *trans. denied*. Further, invited error is not fundamental error. *Cole v. State*, 28 N.E.3d 1126 (Ind. Ct. App. 2015).

[27] First, Harris alleges that Sergeant Walters' reference to the lease as a "fraudulent document" was improper. Tr. p. 87. There, Walters was being cross-examined, and it was defense counsel, **not** Walters, who used the term "fraudulent document" in his question to Walters. As such, this statement can only constitute invited error.

[28]     Later during cross-examination, Sergeant Walters was asked how these cases proceed and if this was a typical case. In responding, he stated, "we explained to Ms. Harris because this document is a fraudulent document, she's not afforded the same civil liberties to go to small claims court because it's – she's there illegally." *Id.* at 94. Walters also testified that he told Harris she did not "have any legal remedy to be in here; [she didn't] have civil remedies afforded to [her] that everybody else who enters into a legal document." *Id.* at 99. In these instances, Sergeant Walters was not testifying to a legal conclusion; rather, he was simply stating what he had said to Harris during the investigation of this case. Regardless, this testimony represents invited error because it was elicited by Harris' counsel on cross-examination.

[29]     In addition, Walters testified that Harris was "entering without authorization." *Id.* at 90. This statement, too, was obtained by defense counsel on cross-examination, as were Sergeant Walters' statements that the police had "disproved the lease factor" and that he "instructed the Judge [of small claims court] on behalf of the City and on behalf of Jeannette Shaw to explain to Ms. Harris she has no civil remedies or legal binding contractual interest to be in that property, and she needs to vacate." *Id.* at 96, 95. Sergeant Walters also responded to a question on cross-examination that Harris' lawsuits "keep getting dismissed because she's not afforded the civil remedies that he and I are if we enter into a legal binding contract." *Id.* at 100. All of this testimony constitutes invited error and thus does not establish fundamental error. *See Cole*, 28 N.E.3d 1126.

[30]     In yet another instance, Harris contends that Sergeant Walters testified, in violation of Rule 704(b), that she had "no legal right to that residence." Tr. p. 80. These words, however, were not Sergeant Walters' words. Instead, they were the words of the prosecuting attorney in posing a question to Walters. Thus, we find no error.

[31]     Finally, Walters testified that Harris had "no legal binding interest in the property" and "no legal interest in this house." *Id.* at 81, 82. In both of these instances, Sergeant Walters was not testifying to a legal conclusion; rather, he was telling the jury what he had said to Harris during the investigation of this case. We find no error. Moreover, Harris has failed to establish fundamental error caused by the admission of any of this testimony.

[32]     We turn now to Harris' second issue. She asserts that the preferred remedy in this case is a civil eviction action rather than criminal charges.

[33]     Whether to prosecute and what charges to bring are decisions that generally rest in the discretion of the prosecutor. *Grott v. State*, 30 N.E.3d 777 (Ind. Ct. App. 2015). Thus, whether a burglary prosecution is the wrong tool for the job in this case is not our decision to make. Rather, our job is to apply the Indiana criminal statutes as drafted by our Legislature. *See An-Hung Yao v. State*, 975 N.E.2d 1273 (Ind. 2012) (discussing defendants' argument that case should be resolved under civil trademark infringement law instead of criminal law). As we have done that which we are bound to do, there is no question for us to address on appeal.

[34] In light of the foregoing, we affirm the judgment of the trial court.

[35] Judgment affirmed.

Najam, J., and Brown, J., concur.