

**FILED**

Apr 15 2015, 9:09 am

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

| ATTORNEY FOR APPELLANT | ATTORNEYS FOR APPELLEE |
|---|---|
| Frederick A. Turner | Gregory F. Zoeller |
| Bloomington, Indiana | Attorney General of Indiana |
| | |
| | Larry D. Allen |
| | Deputy Attorney General |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Brent Cole, | April 15, 2015 |
| *Appellant-Defendant,* | Court of Appeals Case No. 53A04-1408-CR-356 |
| v. | Appeal from the Monroe Circuit Court |
| State of Indiana, | Lower Court Cause No. 53C03-1305-FD-539 |
| *Appellee-Plaintiff.* | The Honorable Kenneth G. Todd, Judge |

**Pyle, Judge.**

## Statement of the Case

Brent Cole ("Cole") appeals, following a jury trial, his convictions for Class A misdemeanor strangulation[1] and Class A misdemeanor battery.[2]  At trial, Cole did not tender a preliminary instruction on self-defense but raised the defense during the course of the trial.  There was a motion in limine in place prohibiting any evidence of prior allegations of violence by the victim, but, during trial, Cole made references to his statement—that he had warned the victim to never touch him or his family again—that Cole had made while he pinned the victim to the wall.  The references to Cole's statement prompted a juror to submit a question asking who the victim had previously touched.  Additional circumstances during Cole's testimony, plus the absence of any instruction regarding Cole's claim of self-defense, led the trial court to draft an admonition setting out an instruction on self-defense and clarifying that any suggestion by Cole that the victim had previously unlawfully touched a member of Cole's family would not constitute a defense to the charges against Cole.  The trial court gave a copy of the proposed admonition to the parties, and Cole specifically stated that he had no objection to it.  The trial court admonished the

---

[1] IND. CODE § 35-42-2-9 (2013).  Cole was originally charged and found guilty by the jury of strangulation as a Class D felony, but the trial court entered a judgment of conviction for this offense as a Class A misdemeanor at sentencing.  We note that, effective July 1, 2014, a new version of the strangulation statute was enacted and that Class D felony strangulation is now a Level 6 felony.  Because Cole committed his crime in 2013, we will apply the statute in effect at that time.

[2] I.C. § 35-42-2-1(a)(1)(A) (2013).  The battery statute was also amended effective July 1, 2014, but Class A misdemeanor battery resulting in bodily injury remains a Class A misdemeanor.

jury accordingly during the trial and then included a final instruction on self-defense.

[2] On appeal, Cole argues that the trial court committed fundamental error by admonishing or instructing the jury during the trial and that the State failed to present sufficient evidence to rebut his claim that he committed his offenses in self-defense. We find that: (1) Cole has waived any claim of error in regard to the admonition; (2) he invited any alleged error by specifically agreeing to the content of the trial court's admonition; and (3) the State presented sufficient evidence that Cole was the initial aggressor and then re-engaged with the victim. As a result, we affirm his convictions.

[3] Affirmed.

## Issues

[4] 1. Whether Cole has waived any argument regarding the trial court's admonition on evidentiary matters.

[5] 2. Whether the State presented sufficient evidence to rebut Cole's claim that he committed his offenses in self-defense.

## Facts

[6] In May 2013, Joseph Dalton Phillips ("Phillips") and his girlfriend, Morgan Cole ("Morgan"), who is Cole's daughter, were expecting a baby. Phillips was remodeling a house in Monroe County to get it ready for the baby's arrival the following month.

[7] On May 9, 2013, Phillips and Morgan were at the house, which was still under renovation. Around 9:30 p.m., Phillips dropped Morgan off at her house, where she lived with her mother and Cole.

[8] Shortly after returning to his house, Phillips heard a knock on the door. Cole, who smelled of alcohol and was carrying a half-full jug of wine, walked into Phillips's kitchen, looked around, and criticized Phillips for the slow progress on the house renovation. Phillips agreed that he needed to get it done, and then Cole "got angry and he began to yell" at Phillips. (Tr. 130). Cole—who had been sitting on a stack of drywall—stood up, "continued to yell" at Phillips, "approached [Phillips] at a pretty quick rate[,]" "put his hands on [Phillips's] chest[,]" and "pinned" Phillips up against the kitchen counter. (Tr. 130). Cole grabbed Phillips's shirt and was yelling at him so closely that Phillips "could feel [Cole's] spit hitting [his] face." (Tr. 132). Phillips, thinking that he "needed to get separation," then pushed Cole away from him. (Tr. 132). Cole tripped over the stack of drywall and knocked over his wine. Phillips told Cole to get out of the house and that he did not want to fight. Cole got up and moved toward Phillips "very quickly" with his arms facing toward Phillips. (Tr. 134). Phillips tried to grab Cole's arms to stop him, but Phillips "didn't have the strength to stop him[.]" (Tr. 134). Cole grabbed Phillips by the neck and twice punched him in the face with a "closed fist[.]" (Tr. 134). Cole yelled at Phillips, telling him that he "wasn't doing enough" and "wasn't being the role in the family [he] needed to be." (Tr. 134). Cole had his one hand "around [Phillips's] neck and was clenching down to the point where it was

closing [his] air passage." (Tr. 135). With his other hand, Cole slapped Phillips's face and told him to say "uncle." (Tr. 134). When Phillips said it, Cole told him that he had not said it loud enough. Cole then slapped Phillips again and told him to "say 'uncle bitch[.]'" (Tr. 135). Phillips said "uncle" as loud as he could, and Cole slapped Phillips again, told him to "stop making excuses for th[e] house[,]" and then let him go. (Tr. 136). Cole then grabbed his jug of wine and left Phillips's house.

[9] Phillips immediately called the police, and Monroe County Sheriff's Deputy Jeff Feiner ("Deputy Feiner") was dispatched to Phillips's house. Phillips had redness and bruising around his neck, a "busted lip," and a black eye. (Tr. 137). Deputy Feiner photographed Phillips's injuries at the scene and then went to Cole's house.

[10] While at Cole's house, the deputy asked Cole if he was injured, and Cole replied that he was not. As Deputy Feiner talked to Cole, he detected the odor of alcohol on Cole's breath. Cole "described the altercation" to Deputy Feiner and told the deputy that he "had pinned Mr. Phillips in the corner and [had] grabbed his 'neck meat.'" (Tr. 166). When asked by the deputy, Cole told the deputy that he "did not feel threatened" by Phillips and that "Phillips did not advance on him." (Tr. 168). Cole never told the deputy that Phillips had started the fight. Cole stated that "he should have beaten [Phillips's] ass." (Tr. 169). Cole described the events of the evening in a written statement, in which he stated:

> Me and [Phillips] got in an arguement [sic]. Me and [Phillips] stood toe to toe. [sic] [Phillips] pushed me down. I pinned [Phillips] to the wall by his neck and told him not to touch me or my family again. I took my left elbow and pinned his neck to the wall and held his neck and or collar with my right hand.

(State's Ex. 7). Deputy Feiner also spoke to Morgan, showed her the photographs of Phillips's injuries, and confirmed that Phillips was not injured when she last saw him.

[11] Thereafter, the State charged Cole with Class D felony strangulation and Class A misdemeanor battery.[3] On June 16, 2014, the trial court held a jury trial. Prior to trial, the State filed a motion in limine, seeking, in part, to exclude "[a]ny evidence of prior allegations of violence by the named victim or allegations reported to the Department of Child Services regarding the named victim." (App. 18). On the morning of trial, Cole's counsel confirmed that Cole had no objection to the motion and that he understood that he could not talk about any "bad acts." (Tr. 9). The trial court granted the State's motion in limine and ordered the parties to "instruct their witnesses to comply with the terms of the granted" motion. (Tr. 9). Cole did not tender any preliminary jury instructions, and the trial court did not instruct the jury on self-defense.

[12] During opening statements, Cole's attorney stated that Cole went to Phillips's house to confront Phillips about "some statements made to a third party" and

---

[3] The State alleged that Cole had committed battery when he touched Phillips in a rude, insolent, or angry manner by "punch[ing] his face, resulting in bodily injury, to-wit: swelling[,] bruising[,] and bleeding." (App. 30).

to "[a]ccuse [Phillips] of doing that." (Tr. 111). Cole's attorney also made a reference to a claim of self-defense, stating that Phillips had touched Cole first when Phillips pushed him. His attorney stated that Cole then got up, "put the kid up against the wall and told him[,] 'you're not gonna touch me or my family again.'" (Tr. 112). Thereafter, Cole's counsel told the trial court that he was going to tender a self-defense instruction for inclusion in the final jury instructions.

[13] During the trial, Phillips testified to the facts above and stated that Cole had touched him first. During cross-examination, Cole's attorney asked Phillips if Cole had said anything to him as Cole was hitting him, and Phillips responded that Cole had told him to say "uncle" as Cole choked him. (Tr. 147). Cole's attorney then asked, "Did [Cole] say anything to the effect of do not put your hands on me or my family ever again?" (Tr. 147). Phillips responded that he did not recall Cole saying that.

[14] When Deputy Feiner testified, he stated that, on the night of the incident, Cole had told him that altercation "started as a verbal argument over the progress of the renovation on the home." (Tr. 167). On direct examination, Deputy Feiner testified that Cole had told the deputy that "he should have beaten [Phillips's] ass" and "then told [the deputy] that he told Mr. Phillips not to touch him or his family again." (Tr. 169). The State introduced State's Exhibit 7, Cole's written statement to police, into evidence. During cross-examination of Deputy Feiner, Cole's attorney asked the deputy if Cole—after he had "pinned" Phillips

to the wall—had told Phillips "that he better not ever again lay his hands on himself or his family?", and Deputy Feiner responded, "Correct." (Tr. 179).

[15]     When the jurors submitted questions for Deputy Feiner, one of the jurors asked, "Who did [the] witness touch for the defendant to say 'you're not going to touch me or my family again[]?'" (Tr. 186-87). The trial court did not pose the question to the deputy but discussed it with the parties outside the presence of the jury. The prosecutor's position on the question was that the trial court should not ask it because the question "got in[]to the realm covered by the motion in limine." (Tr. 187). The prosecutor explained that Cole had previously alleged that Phillips had struck Morgan and Cole's grandchild and that Cole had called Department of Child Services on him. The prosecutor argued that these alleged prior bad acts were not relevant. Cole's attorney asserted that the question should be asked because Cole's position was that he had said that statement to Phillips when he pinned him against the wall and "[s]o that's already out there." (Tr. 189). The trial court stated that he presumed that the juror's reference to the "witness" was meant to be Phillips and not the deputy and confirmed with Cole's counsel that the potential answer to the question did not "bear on the issues of this case[.]" (Tr. 190). When ruling that it would not ask the juror's question, the trial court stated:

> And if we venture off in[]to that we could be here, I presume for
> an extended period of time discussing evidence about that and
> whether there was or wasn't the touching of another person.
> Whether that – all to the end that it bears not on the issues [that]
> will be submitted to the jury. So I am not going to answer or ask
> that question.

(Tr. 190-91). Thereafter, the State rested its case.

[16] Cole presented testimony from himself to raise a claim of self-defense. During his testimony, he disputed the facts that lead to Cole pinning Phillips to the wall. Cole testified that he was arguing with Phillips when Phillips pushed him, causing him to fall on the drywall. Additionally, Cole testified that he "stood up and defended [him]self" when Phillips stood "hovering over [Cole] with his fists balled up" and had a knife nearby. (Tr. 201). Cole admitted that he "took [his] elbow [and] drove it right in[]to the side of [Phillips's] head and drove him in[]to the cabinets." (Tr. 202). Cole also admitted that he "slapped" Phillips in the face but denied that he choked him. (Tr. 202). Cole then repeatedly testified that he told Phillips to keep his hands off Cole and his family. He contended that he was trying to "[d]efend [him]self and establish the point that [he was] tired of [Phillips] putting his hands on [Cole] and [his] family." (Tr. 204).

[17] When Cole was testifying about being charged with the crimes, he stated that he told a deputy prosecutor that he did not "understand why charges isn't [sic] pressed on somebody else." (Tr. 209). Cole then followed up that statement by saying, "There's a lot of other things I can't talk about right now but the bottom line is [. . . .]" (Tr. 209). The State immediately objected and moved to strike Cole's statement to the jury that there were a lot of things that he could not talk about during his testimony. The State argued that it appeared that Cole was "trying to violate the Motion in Limine[.]" (Tr. 209). Cole's attorney stated

that it was not "particularly germane[] [to] anything," and the trial court excused the jury to discuss the State's objection and motion to strike. (Tr. 209).

[18] During the discussion, the following exchange occurred between the trial court and Cole's attorney:

> **THE COURT:** . . . Perhaps you didn't understand the Motion in Limine which was in writing and to which you consented and agreed and which I ordered the parties to comply with when we started the trial. Mr. Baggerly [Cole's Counsel]?
>
> **[Cole's Counsel]:** I did your honor.
>
> **THE COURT:** Well how did we get in[]to all of this evidence about all of these other allegations?
>
> **[Cole's Counsel]:** I told [Cole] he couldn't talk about other bad acts.
>
> **THE COURT:** But what would we call keeping hands off of me or members of my family? What would we call that?
>
> **[Cole's Counsel]:** It was the statement he made that night.
>
> **THE COURT:** It may have been the statement that he made, that was subject to the Motion in Limine which you did not request any relief from nor did you object to and now we've opened Pandora's Box and who knows how long we're going to be here. You know you all were the one – you conceded the Motion in Limine.
>
> **[Cole's Counsel]:** Right.
>
> **THE COURT:** And it was your Motion in Limine. We could protect the record here. Now I presume you're going to show me some evidence that says that if there was some kind of allegation of battery on some prior incident without any action to defend someone who was in immediate harm that that constitutes some kind of defense to this, is that what you're going to show me?

**[Cole's Counsel]:** Well I got this one case your honor. It basically indicates that if he has – if we're raising self-defense as a defense then we can bring up anything that he as firsthand knowledge of –

**THE COURT:** That doesn't apply to this.

**[Cole's Counsel]:** Ok, I got another one here.

**THE COURT:** Ok so how many days do you think you want to litigate all of this? Do you have your witnesses prepared all of you?

**[Cole's Counsel]:** I've got, I think there are only two instances he has firsthand knowledge of –

**THE COURT:** There is nothing in the evidence that substance- that leads to this exclusion.

**[Cole's Counsel]:** Can I have that back sir. Well actually I think I can abandon that entire line.

**THE COURT:** Well no. It's going to be difficult to abandon something that you've opened up and repeated over and over and over. And the Motion in Limine was clear enough that we weren't to get in[]to that sort of thing. And either he miss instructed [sic] you or you were disregarding the Motion in Limine and the Order of the Court.

(Tr. 210-12).

[19] After the trial court held a recess, and still outside the presence of the jury, the trial court gave the parties a copy of a written admonition that the court intended to give it to the jury.[4] The admonition provided:

> The evidence now includes numerous statements made by or attributed to the Defendant, Brent Cole, to the effect that he,

---

[4] The trial court labeled the admonition as the "Court's In-Trial Instruction No. A." (App. 9).

Defendant Brent Cole, told the alleged victim, Joseph Dalton Phillips, to "keep his hands off (Defendant Brent Cole) and (Defendant Brent Cole's family)."

This Statement can reasonably be construed that Defendant Brent Cole contends that his use of force against the alleged victim, Joseph Dalton Phillips, on May 9, 2013, was lawful and justifiable due to one or more unlawful touchings of Defendant Brent Cole or members of his family by the alleged victim, Joseph Dalton Phillips.

You are advised as follows:

A person may use reasonable force against another person to protect himself or a third party from what he reasonably believes to be the imminent use of unlawful force.

A person acting in self-defense may use only such force as is reasonably necessary under the circumstances to protect himself or a third party from an imminent danger.

"Imminent" means "about to happen" and does not refer to acts in the past.

There is no evidence that Defendant had reason to believe on May 9, 2013, that any third party was in danger of harm because of imminent use of force of [sic] that date by the alleged victim.

Therefore, the suggestion by Defendant that the alleged victim had, at some prior time and place, unlawfully touched any other member of his family, even if that were true, and there is no evidence that it is, would not constitute a defense to the charges at issue in this case.

Whether or not Defendant Brent Cole acted on May 9, 2013, to defend himself against the unlawful use of force by the alleged victim, Joseph Dalton Phillips, is an issue which you will have to decide when you retire to deliberate. The Court will instruct you further on the law pertaining to self-defense during its final instructions.

(App. 9-10).

[20] The trial court explained to the parties that it was going to tell the jury that Cole's "statement does not apply, the statement about hands on somebody else is not self-defense." (Tr. 212). Cole's counsel replied, "Gotcha" and informed the trial court that Cole had "[n]o objection or feedback" to the admonition. (Tr. 213). The trial court then concluded by saying:

> Now if we issue an Order that is intended to govern the presentation of evidence to facility [sic] the flow of the trial and accurately presents evidence bearing on the issue to the jury I expect you to comply with it Mr. Baggerly [Cole's counsel] and you, Ms. Bushey [the prosecutor] to defend the record since you're the person who requested that. Please do so.

(Tr. 213). When the jury returned to the courtroom, the trial court admonished them as set forth above. Thereafter, Cole's attorney continued with his direct examination of Cole.

[21] The trial court's final instructions included an instruction on self-defense. The jury found Cole guilty as charged. During a later sentencing hearing, the trial court entered judgment of conviction on the strangulation charge as a Class A misdemeanor and imposed a one hundred and eighty (180) day sentence suspended to probation. The trial court also imposed a one hundred and eighty (180) day sentence suspended to probation for Cole's battery conviction. The trial court ordered that his sentences be served concurrently and that he undergo a substance abuse evaluation and complete community service. Cole now appeals his convictions.

# Decision

On appeal, Cole argues that: (1) the trial court erred by admonishing the jury; and (2) the State failed to present sufficient evidence to rebut his claim that he committed the strangulation and battery in self-defense.

## 1. Admonition

Cole first argues that the trial court erred when it admonished the jury during the trial.

"Admonitions and instructions to be given to the jury . . . must come from the judge, an impartial source not involved in trial advocacy." *Dooley v. State*, 393 N.E.2d 154, 156 (1979). Under Evidence Rule 105,[5] a trial court has discretion to admonish or instruct a jury on evidentiary matters; it does not, however, have a duty to do so sua sponte. *See Small v. State*, 736 N.E.2d 742, 746 (Ind. 2000) (explaining that a trial court has no affirmative duty to sua sponte admonish a jury or give a limiting instruction); *Humphrey v. State*, 680 N.E.2d 836, 839 (Ind. 1997) ("Rule 105 does not preclude trial courts from giving a limiting admonition or instruction sua sponte as a matter of discretion, but by its plain terms imposes no affirmative duty to do so.") (footnotes omitted). We review a trial court's decision regarding admonitions to the jury under an abuse

---

[5] Evidence Rule 105 provides, "If the court admits evidence that is admissible against a party or for a purpose—but not against another party or for another purpose—the court, on timely request, must restrict the evidence to its proper scope and instruct the jury accordingly." This rule was recently amended, effective January 1, 2014.

of discretion standard. *Gibson v. State*, 702 N.E.2d 707, 710 (Ind. 1998), *reh'g denied*, *cert. denied*. An abuse of discretion occurs if the trial court's decision is clearly against the logic and effect of the facts and circumstances before it. *Id.*

[25] Cole makes multiple arguments regarding the trial court's admonition to the jury. He characterizes the admonition as a jury instruction and claims that the trial court erred by giving a jury instruction during the middle of the trial and that the instruction was a misstatement of the law. Cole also contends that evidence of Phillips's prior acts were admissible and asserts that the jury should have been able to consider those prior acts as part of his self-defense claim. Additionally, Cole suggests that the trial court's admonition violated his due process rights and denied him the right to present a defense in violation of both the United States and Indiana Constitutions. Finally, after acknowledging that he did not object to the trial court's admonition, he contends that the admonition to the jury constituted fundamental error.

[26] We need not, however, address Cole's array of arguments because he has waived appellate review of these arguments. First and foremost, to the extent that Cole is attempting to challenge the propriety of the trial court's admonition, he has waived any such appellate challenge because he did not object to the admonition at trial. In fact, he affirmatively stated that he had "[n]o objection" to the admonition. (Tr. 213). An "'appellant cannot on the one hand state at trial that he has no objection to the admission of evidence and thereafter in this Court claim such admission to be erroneous.'" *Halliburton v. State*, 1 N.E.3d 670, 678-79 (Ind. 2013) (quoting *Harrison v. State*, 281 N.E.2d

98, 100 (1972)). Consequently, Cole has waived appellate review of his claim of error. *See Halliburton*, 1 N.E.3d at 683 (quoting *Stahl v. State*, 616 N.E.2d 9, 13 (Ind. 1993)) (explaining that "'[n]othing is preserved on appeal where a defendant fails to object to a limiting instruction'"). *See also Brown v. State*, 929 N.E.2d 204, 207 (Ind. 2010) (holding that defendant, who did not object to evidence upon its introduction and who affirmatively stated he had no objection, waived review of his argument), *reh'g denied*.

[27] Additionally, in regard to Cole's suggestion that evidence of Phillips's alleged prior bad acts was admissible and should have been considered by the jury, we note that, prior to trial, the trial court granted the State's motion in limine to exclude any evidence regarding such prior acts. Cole, however, never made an offer to prove at trial or made any specific argument on the admissibility of any such evidence. Therefore, he has waived this argument on appeal. *See Carter v. State*, 932 N.E.2d 1284, 1287 (Ind. Ct. App. 2010) ("The failure to make an offer to prove results in a waiver of the asserted evidentiary error.").

[28] Furthermore, Cole's arguments that the trial court's admonition violated his due process rights and denied him a right to present a defense are also waived because he failed to make an objection based on these grounds at trial. *See Moore v. State,* 669 N.E.2d 733, 742 (Ind. 1996) (explaining that a defendant waives a claim on appeal when he does not object to the introduction of evidence, makes only a general objection, or objects only on other grounds), *reh'g denied*.

[29] Finally, we turn to Cole's argument that the trial court's admonition constituted fundamental error. "The fundamental error exception is 'extremely narrow, and applies only when the error constitutes a blatant violation of basic principles, the harm or potential for harm is substantial, and the resulting error denies the defendant fundamental due process.'" *Brown*, 929 N.E.2d at 207 (quoting *Mathews v. State*, 849 N.E.2d 578, 587 (Ind. 2006)).

[30] Cole has also waived appellate review of this argument because he invited any alleged error in the giving of the admonition. "A party may not invite error, then later argue that the error supports reversal, because error invited by the complaining party is not reversible error." *Kingery v. State*, 659 N.E.2d 490, 494 (Ind. 1995), *reh'g denied*.

[31] From reviewing the transcript of the trial, it is clear that the trial court's admonition was given in response to Cole's presentation of his defense and evidence. Cole did not tender a self-defense instruction for inclusion in the preliminary instructions. During opening statements, however, Cole's counsel set forth that Cole's defense would be one of self-defense, and then he referenced Cole's statement to Phillips warning him not to touch Cole or his family again. When Cole's counsel cross-examined Phillips and Deputy Feiner, he again brought up Cole's statement warning Phillips not to touch him

or his family.[6]  The repeated reference to this statement then led one of the jurors to submit a question asking whom Phillips had previously touched. Outside the presence of the jury, the trial court discussed the fact that the answer to this question had no bearing on the issues submitted to the jury and that it could lead to a violation of the State's motion in limine.  When Cole testified, he repeatedly testified that he told Phillips to keep his hands off Cole and his family.  He testified that he was trying to "[d]efend [him]self and establish the point that [he was] tired of [Phillips] putting his hands on [Cole] and [his] family." (Tr. 204).  Cole then testified that he did not understand why charges were not "pressed on somebody else" and told the jury that "[t]here[] [were] a lot of other things [he could not] talk about right now but the bottom line [was] . . . ." (Tr. 209).  The State immediately objected and moved to strike Cole's statement.  The trial court excused the jury, discussed the matter with the parties, and then gave them a written copy of an admonition for their review prior to the court giving it to the jury.  This admonition provided a means of instructing the jury on the claim of self-defense—which had not previously been done because Cole had not requested such a preliminary instruction—as well as the proper scope of the evidence of Cole's warning

---

[6] We acknowledge that the State also introduced evidence of Cole's statement to Phillips when it tendered State's Exhibit 7, Cole's written statement from the night of the crimes.  It is not the statement itself that is being challenged; instead, it is the statement and the inference set forth by Cole that the statement was justification for his claim of self-defense.

statements. Cole's counsel affirmatively stated that Cole had "no objection" to the admonition. (Tr. 213). To the extent that the trial court's giving of the admonition could be considered erroneous, any such error was invited by Cole. Because "invited error is not fundamental error" and is not subject to appellate review, this issue is waived. *See Kingery*, 659 N.E.2d at 494.

## 2. Sufficiency

[32] Cole does not dispute the fact that he strangled and battered Phillips. Instead, his challenge to the sufficiency of the evidence is limited to his argument that the State failed to present sufficient evidence to rebut his claim that he committed the strangulation and battery in self-defense.

[33] The standard of review for a challenge to the sufficiency of evidence to rebut a claim of self-defense is the same as the standard for any sufficiency of the evidence claim. *Wilson v. State*, 770 N.E.2d 799, 801 (Ind. 2002). We neither reweigh the evidence nor judge the credibility of witnesses. *Id.* Additionally, if there is sufficient evidence of probative value to support the conclusion of the trier of fact, then the verdict will not be disturbed. *Id.*

[34] A valid claim of self-defense is legal justification for an otherwise criminal act. *Coleman v. State*, 946 N.E.2d 1160, 1165 (Ind. 2011). "A person is justified in using reasonable force against any other person to protect the person or a third person from what the person reasonably believes to be the imminent use of unlawful force." IND. CODE § 35-41-3-2(c). However, a person is not justified in using force if the person has "entered into combat with another person or is

the initial aggressor unless the person withdraws from the encounter and communicates to the other person the intent to do so and the other person nevertheless continues or threatens to continue unlawful action." I.C. § 35-41-3-2(g)(3).

[35] In order to prevail on a claim of self-defense, a defendant must show: (1) he was in a place where he had a right to be; (2) he acted without fault; and (3) he had a reasonable fear of death or great bodily harm. *Coleman*, 946 N.E.2d at 1165. "When a claim of self-defense is raised and finds support in the evidence, the State has the burden of negating at least one of the necessary elements." *Wilson*, 770 N.E.2d at 800. "The State may meet this burden by rebutting the defense directly, by affirmatively showing the defendant did not act in self-defense, or by simply relying upon the sufficiency of its evidence in chief." *Miller v. State*, 720 N.E.2d 696, 700 (Ind. 1999). *Id.* Whether the State has met its burden is a question of fact for the fact-finder. *Id.*

[36] Cole argues that he was justified in strangling and battering Phillips. Cole—relying on his own testimony—contends that he had a right to be at Phillips's house, that he "did not instigate or initiate the physical altercation[,]" and that he had a "reasonable fear of imminent harm" because Phillips was younger and because he claims that there was a knife nearby that Phillips could have possibly used. (Cole's Br. 9). We disagree.

[37] As the State correctly asserts, the evidence presented during the jury trial reveals that "Cole instigated the fight and was the initial aggressor." (State's Br. 19).

The evidence presented showed that Cole was a willing participant in the altercation, which ended up with him strangling, slapping, and punching Phillips in the face. Furthermore, Cole did not withdraw from the encounter. Indeed, the evidence reveals that Cole and Phillips had a verbal argument that resulted in Cole pinning Phillips against the kitchen cabinets and then Phillips pushing Cole away, causing Cole to trip over the drywall. That initial altercation, however, ended when Phillips told Cole that he did not want to fight him and that he wanted Cole to leave his house. Cole, however, got up, grabbed Phillips by the neck, and punched him in the face. Cole kept his hand "clench[ed]" around Phillips's neck to the point where it closed Phillips's air passage. (Tr. 135). As Cole continued to choke Phillips, Cole slapped Phillips's face and told him to say "uncle." (Tr. 134). Furthermore, when questioned by Officer Feiner on the night of the incident, Cole told the deputy that he did not feel threatened by Phillips and that Phillips did not advance on him. Thus, the State met its burden of rebutting Cole's claim of self-defense.

[38] Cole's argument that his trial testimony shows that he justifiably acted in self-defense when he strangled Phillips and punched him in the face is nothing more than an invitation to reweigh the evidence and judge the credibility of the witnesses, which we will not do. *See Drane v. State*, 867 N.E.2d 144, 146 (Ind. 2007). Because there was probative evidence from which the trier of fact could have found that that Cole did not validly act in self-defense or that the State rebutted his self-defense claim beyond a reasonable doubt, we affirm his

convictions for Class A misdemeanor strangulation and Class A misdemeanor battery.

[39]    Affirmed.

Barnes, J., and May, J., concur.