## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jan 31 2019, 5:48 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Donald R. Shuler
Barkes, Kolbus, Rife & Shuler, LLP
Goshen, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Matthew B. Mackenzie
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Jarrod Adam Spigutz,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

January 31, 2019

Court of Appeals Case No.
18A-CR-584

Appeal from the Elkhart Circuit Court

The Honorable Michael A. Christofeno, Judge

Trial Court Cause No.
20C01-1705-MR-5

**Pyle, Judge.**

# Statement of the Case

Jarrod Spigutz ("Spigutz") appeals his conviction by jury of murder,[1] carrying a handgun without a license as a Class A misdemeanor,[2] and possession of marijuana as a Class B misdemeanor.[3] He argues that: (1) the trial court abused its discretion in admitting autopsy photographs; (2) there is insufficient evidence to support his murder conviction; and (3) his sixty-five (65) year sentence for murder is inappropriate in light of the nature of the offense and his character. Concluding that the trial court did not abuse its discretion, there is sufficient evidence to support Spigutz's murder conviction, and Spigutz's sentence is not inappropriate, we affirm Spigutz's convictions and sentence.

We affirm.

# Issues

1.   Whether the trial court abused its discretion when it admitted autopsy photographs.

2.   Whether there is sufficient evidence to support Spigutz's murder conviction.

2.   Whether Spigutz's sentence is inappropriate in light of the nature of the offenses and his character.

---

[1] IND. CODE § 35-42-1-1.

[2] I.C. § 35-47-2-1.

[3] I.C. § 35-48-4-11.

## Facts

In December 2016, eighteen-year-old Spigutz began purchasing marijuana from Jared Foltz ("Foltz"). Spigutz typically purchased a quarter of an ounce of marijuana every two weeks, and the transactions generally occurred at Foltz's residence. In May 2017, Spigutz arranged to purchase two ounces of marijuana from Foltz, who told Spigutz that the cost would be $420. Spigutz and Foltz agreed to meet in an Elkhart Menard's parking lot. Spigutz took a gun with him because he was worried that Foltz would attempt to rob him.

At approximately 7:00 in the evening on May 28, 2017, Spigutz and Foltz arrived at Menard's in separate cars and parked near the store's garden center. Spigutz got out of his car and into the front passenger's seat in Foltz's vehicle. Spigutz placed the money that he had brought into the vehicle's console, and Foltz handed him the bag of marijuana. At some point during the transaction, Spigutz shot Foltz eight times. One shot hit Foltz in the face just below his nose, six shots hit him in the upper right arm, and one shot hit him in the back of his head. The gun was placed so close to Foltz's face that gun powder burned it. After shooting Foltz, Spigutz grabbed the bag of marijuana and calmly walked to his car. The entire incident had taken less than five minutes.

Menard's customers in the parking lot, who thought they had heard a packet of firecrackers going off, saw Spigutz exit Foltz's car, place the gun and marijuana in his trunk, and drive away as if nothing had happened. None of these customers had seen or heard any fighting coming from the car. Several of the customers contacted the police and reported the license plate number on

Spigutz's car. A few minutes later, the police stopped Spigutz and found the gun that had killed Foltz and the bag of marijuana in his trunk.

[6] Police officers who were dispatched to the Menard's parking lot found Foltz dead in the front seat of his car. Foltz's left hand was empty, and his right hand was clutching a cigarette lighter and resting on a cell phone. Police found no weapons or money in Foltz's car.

[7] Later that evening, Goshen Police Department Detective Nick McCloughen ("Detective McCloughen"), who was assigned to the Elkhart Police Department, interviewed Spigutz. Spigutz admitted killing Foltz. Specifically, Spigutz, who had taken his aunt's gun without her permission, told the detective that he had taken the gun to defend his money. Spigutz further explained that while he was in Foltz's car, Foltz had told him to get out of the car. According to Spigutz, he had panicked because he thought Foltz was taking his money and keeping the bag of marijuana. Spigutz explained that, as a result of this panic, he had pulled out his gun and shot Foltz eight times. Spigutz never told Detective McCloughen that he had been in fear for his safety.

[8] The State charged Spigutz with murder, carrying a handgun without a license as a Class A misdemeanor, and possession of marijuana as a Class B misdemeanor. At trial, the parties stipulated to the admission of Foltz's autopsy report, which included the following information: (1) Foltz died as a result of eight gunshot wounds to the face, head, and upper extremity; (2)

gunpowder stippling surrounded the facial wound, but not the other wounds; (3) bullets and fragments of bullets were recovered from Foltz's brain, neck, shoulder, and subclavian region; (4) a diagram in the autopsy report documented seven of the eight entry wounds; and (5) the bullets were collected as evidence and turned over to law enforcement as part of the investigation.

[9] Following the admission of this report into evidence, the State moved to admit photographs taken before Foltz's autopsy. Specifically, the State sought to admit twelve photographs of Foltz's injuries. Four of the photographs showed Foltz's facial wound from different perspectives, four of the photographs showed different views of the six gunshot wounds located on Foltz's right arm and side, and four of the photographs showed different views of the gunshot wound located on the back of Foltz's head. The photos were taken after the injuries had been cleaned for the autopsy but before the autopsy had begun. According to the State, the photographs would help the jury understand the autopsy report and its findings. Spigutz objected to the admission of the photographs and argued that they were cumulative of the autopsy report and prejudicial. The trial court concluded that the photographs had probative value in that they would assist the jurors in understanding the language of the autopsy report. The trial court also noted that the photographs did "not display wounds in contorted or configured fashion, nor [did] they display wounds in a manner that [was] in any way calculated to prejudice the jury." (Tr. Vol. 3 at 101). The trial court further noted that the photographs were taken after Foltz's body had been cleaned for the autopsy.

[10]     Also at trial, Spigutz testified that he had heard that Foltz had robbed people and gotten into fights. He explained that he had also heard that Foltz had posted a picture of himself on social media holding a gun. According to Spigutz, one time he had purchased marijuana from Foltz at a hotel and had seen guns on the bed. Spigutz explained that, despite believing that Foltz was dangerous, he had continued to purchase marijuana from Foltz because "he had the best weed that [he] could get and for the best price." (Tr. Vol. 4 at 125-26).

[11]     Spigutz further explained that he had taken a gun with him that evening because he was spending more money on marijuana than usual. According to Spigutz, after Foltz had handed him the two-ounce bag of marijuana, Spigutz had set it down. Before Spigutz had the opportunity to pick the bag back up, Foltz had grabbed it and had told Spigutz to get out of the car. Spigutz testified that that "made [him] pretty upset 'cause [he], kind of, had the indication that [Foltz] was gonna rob [him]." (Tr. Vol. 4 at 141). Spigutz explained that he had become angry and panicked. It felt like his "heart was beating out of [his] chest." (Tr. Vol. 4 at 143). According to Spigutz, he had made the decision to shoot Foltz "within a split second 'cause that's when he started to say something, and he started to pull something up from the seat. That's when [Spigutz] began firing." (Tr. Vol. 4 at 143). During cross examination, Spigutz admitted that he had not seen a weapon or even a "flash of silver." (Tr. Vol. 4 at 159). Spigutz also testified that he was partly "protecting [his] money that [he had] worked hard for" as well as partly protecting himself. (Tr. Vol. 4 at

180). Spigutz further tesified that every time he had pulled the trigger, he had had to release it for another shot, and that he did not have time to think.

[12] The trial court instructed the jury on both voluntary manslaughter and murder. The jury convicted Spigutz of murder, carrying a handgun without a license, and possession of marijuana.

[13] Before imposing Spigutz's sentence, the trial court found the following aggravating factors: (1) Spigutz had a prior criminal history that included breaking and entering as a juvenile, which was disposed of in an informal adjustment and a deferred commitment and probation for breaking and entering as an adult; (2) Spigutz was on probation at the time he committed the offense in this case; (3) Spigutz regularly used alcohol and drugs, including using marijuana three times per week for the past four years;[4] (4) Spigutz failed to accept responsibility or show remorse until the day of sentencing; (5) Spigutz shot an unarmed Foltz eight times at point blank range – the first shot was to his face and the last shot was to the back of his head; (6) Spigutz shot Foltz in order to steal drugs from him; (7) Spigutz failed to remain at the scene or render aid to Foltz; and (8) Spigutz continued to engage in criminal activities despite being given alternative sanctions such as an informal adjustment and a deferred commitment.

---

[4] The trial court specifically told Spigutz as follows: "[E]ach time you used alcohol or drugs in that fashion was a separate crime, which shows the Court you have a complete and utter disregard for the law or society." (Tr. Vol. 5 at 70).

In addition, the trial court found the following mitigating factors: (1) Spigutz's statements at the sentencing hearing; (2) Spigutz's age; and (3) Spigutz's mental health and addictions issues  Thereafter, the trial court sentenced Spigutz to sixty-five (65) years for murder, one (1) year for carrying a handgun without a license, and one-hundred and eighty (180) days for possession of marijuana. The trial court ordered the sentences to run concurrent with each other for an aggregate sentence of sixty-five (65) years, with sixty (60) years executed and five (5) years suspended to probation.  Spigutz now appeals his conviction and sentence.

# Decision

## 1. Autopsy Photographs

Spigutz first argues that the trial court abused its discretion when it admitted the autopsy photographs into evidence.  He specifically contends that the autopsy photos were irrelevant, cumulative and prejudicial.

To exclude photographs from evidence on relevancy grounds, Spigutz must show that their improper influence on the jury outweighed their probative value and that they were cumulative. *See Wright v. State*, 730 N.E.2d 713, 720 (Ind. 2000).  Photographs depicting the victim's injuries or demonstrating a witness' testimony are generally admissible and will not be rejected merely because they are gruesome or cumulative. *Id.*  To exclude photographs because they are cumulative, Spigutz must show that their probative value is substantially

outweighed by the needless presentation of cumulative evidence. *See id.* We review the trial court's ruling for an abuse of discretion. *Id.*

[17]   Here, our review of the photographs reveals twelve photographs of Foltz's injuries after they had been cleaned and before the autopsy had begun. The photographs are not particularly gruesome, and as the trial court noted, the photographs did "not display wounds in contorted or configured fashion, nor [did] they display wounds in a manner that [was] in any way calculated to prejudice the jury." (Tr. Vol. 3 at 101). The trial court further noted that the photographs were taken after Foltz's body had been cleaned for the autopsy. These photographs were not needlessly cumulative and were not introduced solely for the purpose of inflaming the jurors' emotions. The trial court did not abuse its discretion in admitting them into evidence. *See id.*

## 2. Sufficiency of the Evidence

[18]   Spigutz further argues that there is insufficient evidence to support his murder conviction. Specifically, he contends that the State failed to rebut his claim that he shot and killed Foltz in self-defense and, in the alternative, that he should have been convicted of manslaughter. We address each of his contentions in turn.

## A. Self-Defense

[19]   Spigutz first argues that the State failed to present sufficient evidence to rebut his claim that he shot and killed Foltz in self-defense. The standard of review for a challenge to the sufficiency of the evidence to rebut a claim of self-defense

is the same as the standard for any sufficiency of the evidence claim. *Cole v. State*, 28 N.E.3d 1126, 1136-37 (Ind. Ct. App. 2015). We neither reweigh the evidence nor judge the credibility of witnesses. *Id.* at 1137. Additionally, if there is sufficient evidence of probative value to support the conclusion of the trier of fact, then the verdict will not be disturbed. *Id.*

[20] A valid claim of self-defense is legal justification for an otherwise criminal act. *Id.* "A person is justified in using reasonable force against any other person to protect the person or a third person from what the person reasonably believes to be the imminent use of unlawful force." IND.CODE 35-41-3-2(c). In order to prevail on a claim of self-defense, a defendant must show that: (1) he was in a place where he had a right to be; (2) he acted without fault; and (3) he had a reasonable fear of death or great bodily harm. *Cole,* 28 N.E.3d at 1137.

[21] When a claim of self-defense is raised and finds support in the evidence, the State has the burden of negating at least one of the necessary elements. *Id.* The State may meet this burden by rebutting the defense directly, by affirmatively showing the defendant did not act in self-defense, or by simply relying upon the sufficiency of its evidence in chief. *Id.* Whether the State has met its burden is a question of fact for the fact-finder. *Id.*

[22] Here, Spigutz argues that he was justified in shooting Foltz. Specifically, relying on his own testimony, Spigutz contends that he had a right to be in Foltz's car, that he did not provoke the violence, and that he had a reasonable fear of great bodily harm. However, our review of the evidence reveals that

Spigutz never mentioned a fear of death or great bodily harm in his police interview the night of the shooting. Rather, Spigutz told Detective McCloughen that he had shot Foltz eight times in a moment of panic when he believed that Foltz was taking his money and keeping his bag of marijuana. In addition, at trial, Spigutz testified that he had shot Foltz because he thought Foltz was robbing him. According to Spigutz, he never saw a weapon or even a "flash of silver." (Tr. Vol. 4 at 159). The State has met its burden of rebutting Spigutz's self-defense claim, and there is sufficient evidence to support his murder conviction. Spigutz's argument is nothing more than an invitation to reweigh the evidence and judge the credibility of the witnesses, which we will not do. *See Drane v. State*, 867 N.E.2d 144, 146 (Ind. 2007).

### B. Voluntary Manslaughter

[23] Spigutz also argues he should have been convicted of voluntary manslaughter because the evidence was insufficient to convict him of murder. Indiana's murder statute provides that a person who knowingly or intentionally kills another human being commits murder. IND. CODE § 35-42-1-1. However, a person who knowingly or intentionally kills another human being while acting under sudden heat commits voluntary manslaughter. IND. CODE § 35-42-1-3(a). Sudden heat requires sufficient provocation to engender passion which is demonstrated by anger, rage, sudden resentment, or terror that is sufficient to obscure the reason of an ordinary person, prevent deliberation and premeditation, and render the defendant incapable of cool reflection. *Jackson v. State*, 709 N.E.2d 326, 328 (Ind. 1999). Sudden heat is a mitigating factor that

reduces otherwise murderous conduct to voluntary manslaughter. *Id.* "Although the State has the burden of negating the existence of sudden heat beyond a reasonable doubt, in order to inject that issue at all[,] the defendant must point to some evidence supporting sudden heat whether this evidence be in the State's case of the defendant's own." *Id.*

[24] Here, Spigutz contends that Foltz sufficiently provoked him by grabbing the bag of marijuana and telling Spigutz to get out of the car. In evaluating Spigutz's insufficiency claim, we do not reweigh evidence or assess the credibility of witnesses. *Id.* at 329. We look to the evidence and reasonable inferences to be drawn therefrom that support the verdict and will affirm the conviction if there is sufficient probative evidence from which a reasonable jury could have found the defendant guilty beyond a reasonable doubt. *Id.*

[25] Existence of sudden heat is a classic question of fact to be determined by the jury. Here, the trial court instructed the jury on the offenses of murder and voluntary manslaughter, including the requirements for sudden heat. The jury's conviction of Spigutz for murder was a rejection of his sudden heat contention. *See id.* Specifically, our review of the evidence reveals that Spigutz testified that he became upset and panicked when Foltz grabbed the marijuana bag and told him to get out of the car. However, Foltz did not show a weapon to Spigutz and there were no threatening words between Foltz and Spigutz. These facts are sufficient to support the jury's conclusion that Spigutz was not acting in "sudden heat" when he shot Foltz, and there is sufficient evidence to support Spigutz's murder conviction.

### 3. Inappropriate Sentence

Spigutz also argues that his sixty-five (65) year sentence was inappropriate. Indiana Appellate Rule 7(B) provides that we may revise a sentence authorized by statute if, after due consideration of the trial court's decision, we find that the sentence is inappropriate in light of the nature of the offense and the character of the offender. The defendant bears the burden of persuading this Court that his sentence is inappropriate. *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006). Whether we regard a sentence as inappropriate turns on the "culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case." *Cardwell v. State*, 895 N.E.2d 1219, 1224 (Ind. 2008).

When determining whether a sentence is inappropriate, we acknowledge that the advisory sentence is the starting point the Legislature has selected as an appropriate sentence for the crime committed. *Childress*, 848 N.E.2d at 1081. Here, Spigutz was convicted of murder. The sentencing range for murder is from forty-five (45) to sixty-five (65) years, with an advisory sentence of fifty-five (55) years. I.C. § 35-50-2-3. The trial court sentenced Spigutz to sixty-five (65) years, which is the maximum sentence.

With regard to the nature of the offense, Spigutz shot Foltz eight times at close range, and one of the shots was to the back of Foltz's head. With regard to Spigutz's character, we note that eighteen-year-old Spigutz, who was on probation at the time of the shooting, had been using marijuana three times per week for the four years before the shooting. The trial court correctly pointed

out that each time Spigutz used "alcohol or drugs in that fashion was a separate crime," which showed a "complete and utter disregard for the law or society." (Tr. Vol. 5 at 70).

[29] Based on the nature of the offense and his character, Spigutz has failed to persuade this Court that his sixty-five (65) year sentence for murder is inappropriate.

[30] Affirmed.

Najam, J., and Crone, J., concur.