## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jan 22 2021, 9:21 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Philip R. Skodinski
South Bend, Indiana

ATTORNEYS FOR APPELLEE

Theodore E. Rokita
Attorney General of Indiana

Steven Hosler
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Juan Carlos Rojas,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | January 22, 2021<br><br>Court of Appeals Case No.<br>20A-CR-1359<br><br>Appeal from the St. Joseph<br>Superior Court<br><br>The Honorable John M.<br>Marnocha, Judge<br><br>Trial Court Cause No.<br>71D02-1910-MR-10 |

**Pyle, Judge.**

# Statement of the Case

Juan Rojas ("Rojas") appeals his conviction by jury of murder.[1] He argues that: (1) the prosecutor engaged in misconduct; and (2) there is insufficient evidence to support his conviction. Concluding that the prosecutor did not engage in misconduct and that there is sufficient evidence to support his conviction, we affirm Rojas' murder conviction.

We affirm.

# Issues

1. Whether the prosecutor engaged in misconduct.

2. Whether there is sufficient evidence to support Rojas' murder conviction.

# Facts

The facts most favorable to the verdict reveal that, in the early morning hours of February 25, 2019, Rojas and his friend, Ruben Waters ("Waters"), agreed to meet, smoke marijuana, and "chill." (Tr. Vol. 3 at 12). Waters picked up Rojas and Charles Douglas ("Douglas") at Douglas' house in South Bend. Rojas sat in the front passenger seat, and Douglas sat in the back seat directly behind Waters. Rojas brought his Ruger .380 semi-automatic handgun ("the

---

[1] IND. CODE § 35-42-1-1.

Ruger"), and Douglas brought his Glock 9mm semi-automatic handgun ("the Glock"). Waters had a SAR 9mm semi-automatic handgun ("the SAR").

[4] After driving around, Waters backed his car into a driveway near Douglas' house so that the three men could smoke marijuana. At some point, Rojas shot Waters two times in the head with the Ruger. Specifically, Rojas shot Waters in the right back side of his neck and in the right cheek under his eye. Waters was also shot in the back of the head by the Glock. Following the shooting, Rojas and Douglas fled to Douglas' house with the Ruger, the Glock, and the SAR. Rojas did not call for medical assistance for Waters or report the shooting to the police.

[5] Later that morning, Delray Brooks ("Brooks") was leaving for work when he noticed a car that he did not recognize in his neighbor's driveway. The car's engine was running, and Brooks noticed that the car's passenger's side door was open. When Brooks approached the car, Brooks saw Waters slumped over in the front driver's seat. Brooks called 911, and South Bend Police Department officers were dispatched to the scene. When the officers arrived at the scene, the officers discovered a deceased Waters in the front driver's seat of his car. Waters' body was leaning backwards and towards the center console of his car. The left side of Waters' face was facing the roof of his car, and the area below his left ear was angled toward the driver's side window. The officers found three spent shell casings in and around Waters' car.

[6]     An autopsy revealed that the cause of Waters' death was multiple gunshot wounds to the head, and the manner of his death was a homicide. Specifically, Waters had been shot once in the back of the head, and the projectile had been found at the base of his skull. Waters had also been shot in the right back side of his neck, and that projectile had been found in Waters' cervical spine. Lastly, Waters had been shot in the right cheek below his right eye, and the projectile had exited Waters' head below Waters' left ear. The police had not found this projectile during the initial search of Waters' car.

[7]     During a later, more thorough search of Waters' car, police officers found a projectile in the rear hatchback area of the car. One of the officers knew from Waters' autopsy report that a projectile had exited Waters' body and that the projectile had not been found. The officer looked for a point inside Waters' car that would explain how the projectile had ended up in the rear hatchback area of the car. During his search, the officer noticed marks on the inside driver's side window "that were consistent with where this projectile would've exited [Waters' face below his left ear] and hit the window with not enough force to break the window but enough force to . . . go back into the vehicle." (Tr. Vol. 2 at 118-19).

[8]     The same day as the shooting, South Bend Police Department officers executed a search warrant in an unrelated case at Douglas' house. The officers found the Ruger, the Glock, and the SAR hidden in a false wall in a closet. Both the Ruger and the SAR had rounds chambered and were ready to be fired. Subsequent tests revealed that the SAR was in "good working order." (Tr. Vol.

2 at 151). When a firearms examiner test-fired the gun, there were no misfires or other malfunctions.

[9] In October 2019, the State charged Rojas with murder. At Rojas' three-day trial in March 2020, the jury heard the facts as set forth above. In addition, Rojas testified that while the three men were sitting in Waters' car smoking marijuana, Waters pulled out the SAR and placed it against Rojas' head. Rojas heard a click and grabbed the SAR with both hands. According to Rojas, as he and Waters struggled over the SAR, Rojas let go of the SAR with one hand, reached into his jacket pocket, pulled out his Ruger, and shot Waters twice in the head. Rojas further testified that he and Douglas jumped out of the car and ran to Douglas' house. The trial court instructed the jury on self-defense.

[10] Further, during closing argument, the prosecutor argued as follows:

> There's actually zero physical evidence to corroborate [Rojas'] version of events in that car – zero. [Waters] was shot in the back of the head – the back of the head and in the face as he's at an angle like this. Well, how was [Waters] found? He was found like that. Where is the exit wound pointed towards? That window. [Waters] was in that position when he was shot. That was the second shot. The first two were in the back of the head.

(Tr. Vol. 3 at 71).

[11] Rojas' counsel requested to approach the bench and objected to the prosecutor's statement that the first two shots were to the back of Waters' head. According to Rojas' counsel, there was no "evidence on what the sequence of the bullets were." (Tr. Vol. 3 at 72). The trial court responded that the prosecutor's

statement "[was] argument" and explained that it "tell[s] the jury in [its] instructions that the attorneys make arguments but that's not evidence[.]" (Tr. Vol. 3 at 72).

[12] The jury convicted Rojas of murder. Rojas now appeals his conviction.

# Decision

[13] Rojas argues that the prosecutor engaged in misconduct and that there is insufficient evidence to support his murder conviction. We address each of his arguments in turn.

### 1. Prosecutorial Misconduct

[14] Rojas first contends that the prosecutor committed misconduct in closing argument when he argued that the first two shots had been to the back of Waters' head. According to Rojas, although "[t]here was testimony at trial about where . . . Waters was shot, the location of casings, a bullet that hit the driver side window, and the position the body was found[,] there was no testimony which took all those facts together and set forth the sequence of shots." (Rojas' Br. 10).

[15] When reviewing a claim of prosecutorial misconduct, we determine: (1) whether the prosecutor engaged in misconduct, and if so, (2) whether the misconduct, under all of the circumstances, placed the defendant in a position of gravel peril to which he would not have been subjected. *Cooper v. State*, 854 N.E.2d 831, 835 (Ind. 2006). Whether a prosecutor's argument constitutes misconduct is measured by reference to case law and the Rules of Professional

Conduct. *Id*. The gravity of the peril is measured by the probable persuasive effect of the misconduct on the jury's decision rather than the degree of impropriety of the conduct. *Id*.

[16] "It is proper for a prosecutor to argue both law and fact during final argument and propound conclusions based upon his analysis of the evidence." *Poling v. State*, 938 N.E.2d 1212, 1217 (Ind. Ct. App. 2010). "In arguments to the jury, a prosecutor can state and discuss the evidence and reasonable inferences that can be derived therefrom so long as there is no implication of personal knowledge that is independent of the evidence." *Emerson v. State*, 952 N.E.2d 832, 837 (Ind. Ct. App. 2011), *trans. denied*.

[17] Here, our review of the evidence reveals that police officers found Waters' body in the driver's seat of his car. Waters' body was leaning back and towards the center console of his car. The left side of Waters' face was facing the roof of his car, and the area below his left ear was angled toward the driver's side window. This evidence reveals that if Waters had been in that position when he was shot in the upper right cheek, the projectile that exited Waters' face below his left ear could have made the marks on the interior of the driver's side window before ricocheting into the hatchback area of the car. We agree with the State that this evidence reveals that the prosecutor simply analyzed the evidence and made a reasonable inference "that the two rounds [had been] fired into the back of Waters'[] head and neck before his head came to rest facing toward the ceiling of the car. Once Waters'[] head came to rest, Rojas fired the third bullet into Waters'[] cheek that exited his neck, hit the window, and ended up in the back

of [Waters' car]." (State's Br. 20). Therefore, the prosecutor's closing argument was a reasonable inference derived from the evidence and did not imply personal knowledge that was independent of the evidence. As a result, the prosecutor did not engage in misconduct.

## 2. Sufficiency of the Evidence

[18] Rojas further argues that there is insufficient evidence to support his murder conviction. Specifically, he contends that the State failed to rebut his claim that he shot and killed Waters in self-defense.

[19] The standard of review for a challenge to the sufficiency of the evidence to rebut a claim of self-defense is the same as the standard for any sufficiency of the evidence claim. *Cole v. State*, 28 N.E.3d 1126, 1136-37 (Ind. Ct. App. 2015). We neither reweigh the evidence nor judge the credibility of witnesses. *Id.* at 1137. Additionally, if there is sufficient evidence of probative value to support the conclusion of the trier of fact, then the verdict will not be disturbed. *Id.*

[20] A valid claim of self-defense is legal justification for an otherwise criminal act. *Id.* "A person is justified in using reasonable force against any other person to protect the person or a third person from what the person reasonably believes to be the imminent use of unlawful force." IND. CODE § 35-41-3-2(c). In order to prevail on a claim of self-defense, a defendant must show that: (1) he was in a place where he had a right to be; (2) he acted without fault; and (3) he had a reasonable fear of death or great bodily harm. *Cole,* 28 N.E.3d at 1137.

[21]     When a claim of self-defense is raised and finds support in the evidence, the State has the burden of negating at least one of the necessary elements. *Id.* The State may meet this burden by rebutting the defense directly, by affirmatively showing the defendant did not act in self-defense, or by simply relying upon the sufficiency of its evidence in chief. *Id.* Whether the State has met its burden is a question of fact for the finder of fact. *Id.*

[22]     Here, we agree with the State that "Rojas' claim of self-defense was rebutted by the State through its presentation of its case-in-chief." (State's Br. 14). First, although Rojas testified that the SAR "click[ed]" when Waters allegedly attempted to shoot Rojas, the State presented testimony that the SAR was in "good working order." (Tr. Vol. 3 at 6, Tr. Vol. 2 at 151). In addition, when a firearms examiner test-fired the SAR, there were no misfires or other malfunctions.

[23]     We further note that after shooting Waters, Rojas fled the scene and ran to Douglas' house with the murder weapon. Later that day, police officers found the Ruger hidden in a false wall in a closet at Douglas' house. Rojas did not call for medical assistance for Waters or contact law enforcement. This Court has previously held that evidence of a defendant's flight from the scene and subsequent disposition of the murder weapon is probative evidence from which a reasonable factfinder could have concluded that the murder was not committed in self-defense. *See Orozco v. State*, 146 N.E.3d 1038, 1041-42 (Ind. Ct. App. 2020) (finding probative evidence from which a reasonable factfinder could have concluded that the murder was not committed in self-defense where

the defendant fled the scene and disposed of the murder weapon rather than calling for medical assistance or contacting law enforcement), *trans. denied*.

[24] Lastly, we note that the only evidence that Rojas acted without fault or that his reaction was reasonable was contained in Rojas' testimony. The jury, however, had no obligation to credit this evidence and did not. *See McCullough v. State*, 985 N.E.2d 1135, 1139 (Ind. Ct. App. 2013), *trans. denied*. Ultimately, Rojas' argument is nothing more than an invitation to reweigh the evidence and judge the credibility of the witnesses, which we will not do. *See Cole*, 28 N.E.3d at 1137. There is sufficient evidence to support Rojas' murder conviction.

[25] Affirmed.

Vaidik, J., and Brown, J., concur.